Howard Douglas SULLINS, James Floyd Williams, Audrey Louise Gillingham, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 9662–9664.

United States Court of Appeals Tenth Circuit.

Feb. 26, 1968.

Rehearing Denied March 22, 1968.

---

Lewis, Circuit Judge, dissented in part.

James Nelson, Wichita, Kan., for appellants.

Guy L. Goodwin, Asst. U. S. Atty., Wichita, Kan. (Newell A. George, U. S. Atty., District of Kansas, with him on brief), for appellee.

Before WOODBURY,* LEWIS and HICKEY, Circuit Judges.

WOODBURY, Senior Circuit Judge.

These three appellants and one Linda Hughes, otherwise known as Linda Sullins, who did not appeal, were indicted, tried by jury, convicted and sentenced on three counts: two charging the passing of counterfeit $20.00 Federal Reserve notes in Kansas in violation of Title 18 U.S.C. § 472 and § 2 and the third charging conspiracy to pass counterfeit notes in violation of Title 18 U.S.C. § 371. The appellants complain of violations of their federal constitutional rights.

The following facts may be taken as established.

At some time between quarter and half past six o'clock on the evening of March 15, 1967, the appellant Williams obtained change for a counterfeit $20.00 Federal Reserve note at a filling station in Lakin, Kansas. The filling station attendant with the aid of a friend who happened to come in obtained a description of the automobile in which Williams was riding by make, type, color and license number and also the direction in which the car was traveling. The attendant then notified the local sheriff. Acting on this

* Senior Circuit Judge of the First Circuit, sitting by designation.

report a local police officer who was also a deputy sheriff set off in pursuit. He came up with his quarry about 23 miles east of Lakin at a filling station and cafe on the outskirts of Garden City, Kansas. The officer drew up behind the car he was looking for and got out just as Williams got out of the car ahead. The other three also got out of the car. The officer then charged Williams with passing the counterfeit note in Lakin, said they would have to return to straighten the matter out and gave Williams the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

While they were talking the sheriff drove up and he gave all four the *Miranda* warnings. The entire party then returned to the sheriff's office in Lakin where they were joined by the county attorney who once more gave the *Miranda* warnings to all four. The four were held in jail overnight. About mid-afternoon the next day, March 16th, two United States Secret Service agents arrived by automobile from Kansas City, Missouri. They gave the *Miranda* warnings to all four and interrogated them. Later at about quarter before six Sullins signed a standard form of notice and waiver of constitutional rights submitted to him by one of the agents but made no statement. We reproduce the notice and waiver in the margin.[1]

Early in the evening of March 16th the four were taken to Garden City, the location of the nearest United States Commissioner, in two automobiles, the women with local officers in one car, the men with the federal officers in another. Between 8 and 8:30 o'clock that evening the four were taken before the United States Commissioner. He gave them the prescribed notice of their constitutional rights and fixed bail which they were unable to make. They were retained overnight in jail in Garden City.

The following morning, March 17th, the Secret Service Agents talked with the four again. At that time Sullins

---

1. This form is mimeographed with blanks indicated by underlining to be filled in to fit specific cases. It reads:

| YOUR RIGHTS | Place | Lakin, Kansas |
|---|---|---|
| | Date | 3–16–67 |
| | Time | 5:48 PM |

We would like to talk with you about the *possession and Passing of Counterfeit $20 bills in Dallas, T., Denver, Colo. and Lakin, Kans.* which is an offense against the laws of the United States for which the maximum penalty is *15 years in jail/$5000.00 fine or Both.* Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.

Witness: _____  Signed  Howard Douglas Sullins

Witness: Jerry M. Lamb

Witness: L. C. Blankenship  Time  5:55 PM

signed another waiver similar to the one he had signed the day before and both Williams and Linda Hughes, using the name Linda Sullins, also signed like waivers. All three then signed written statements of the same general tenor as oral statements previously given to the federal officers by Williams and Sullins during the trip from Lakin to Garden City the evening before and to some extent corroborating an oral statement given to one of the federal officers by Gillingham in Lakin on March 16th.

At the trial counsel for the appellants moved to suppress any evidence of inculpatory statements made by the appellants and the court, following the teaching of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), held a hearing in the absence of the jury to determine the admissibility of the evidence. The appellants and Hughes took the stand. They admitted that they had repeatedly been given the *Miranda* warnings but asserted that they asked for counsel immediately upon their arrival at the sheriff's office at Lakin and on several subsequent occasions. But they said that their requests for counsel had been ignored. The officers, both local and federal, admitted that they had interrogated the appellants and Hughes at Lakin and Garden City but denied that any one of them had at any time asked to have counsel present at their interrogation. The officers did testify, however, that at no time had any one of the four expressly said that he or she did not want to consult a lawyer before making a statement. The court below denied the motion to suppress and permitted the jury to consider the evidence of inculpatory statements testified to by the officers under instructions to which no objection was made.

■■ The testimony of the officers that none of the accused specifically declined consultation with a lawyer before answering questions is fatal to the admissibility of their inculpatory statements, for the Court in Miranda v. United States, supra, pointed out on page 475 of 384 U.S., on page 1628 of 86 S.Ct. that not only does "a heavy burden" rest upon the Government to show a waiver of the constitutional privilege against self-incrimination and the right to retained or appointed counsel but also that waiver is never to be presumed from failure to ask for counsel. It said:

> "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

And at page 470, 86 S.Ct. at page 1626, the Court categorically said:

> "An individual need not make a preinterrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given."

■ The written statements given after execution of the notices and waivers of constitutional rights do not stand in any better position than the oral statements previously made. The written statements merely reiterate the preceding oral statements. They were made after the damage had been done.[2]

■ Nor may the Government make any use of information obtained as a result of the illegal interrogation for that would be to harvest the "fruit of the poisonous tree."

---

2. Moreover, we think the sentence: "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court" immediately following a statement of a present right to retained and appointed counsel is likely to confuse an unsophisticated lay mind.

There must be a new trial at which evidence of inculpatory statements of the appellants is excluded.

We turn now to some other matters which may arise at the next trial.

■■ The appellants' contention that it was error to deny their motion for separate trials is without merit. Severance is a matter of discretion and we see no abuse of discretion here. Even less will it be an abuse of discretion to deny severance at the trial to come at which there will be no evidence of inculpatory statements of one defendant perhaps involving another.

■ Counsel for the appellants asserts here, although he did not make the contention in the court below, that there was unreasonable delay in taking the appellants before the United States Commissioner in Garden City. The testimony in the record from the officers and from the defendant below, Hughes, given at the hearing on the motion to suppress, is that all defendants were taken before the Commissioner at some time between 8 and 8:30 o'clock on the evening of March 16th, that is to say, about twenty-five hours after they were arrested and about five hours after the federal officers arrived in Lakin after driving almost all the way across the state of Kansas. Appellants' counsel, however, asserts that this testimony is erroneous. He says that the appellants and Hughes were not taken before the Commissioner until the evening of March 17th, some forty-eight to fifty hours after they were arrested and some twenty-eight hours after the federal officers arrived in Lakin from Kansas City. He says that he established this fact by a telephone call to the Commissioner who said that his records showed that the four came before him "after dinner" on March 17th. Counsel for the appellants does not appear in this court as a witness. Moreover, his testimony is hearsay. We go by the evidence in the record. Under the circumstances of time and distance involved and considering the fact that an ordinary mealtime intervened between the arrival of the federal officers in La-kin and appearance before the Commissioner, we are not prepared to hold that there was "unnecessary delay" in violation of Rule 5(a) Fed.R.Crim.P.

We see no error in the admission of certain identification evidence offered by the Government. Other alleged errors are not likely to arise at the next trial and need not be considered.

The judgments of sentence are set aside and the case is remanded for further proceedings not inconsistent with this opinion.

LEWIS, Circuit Judge (concurring and dissenting).

I agree that these cases must be reversed for, although the appellants were repeatedly and properly warned by state authorities of their rights to counsel, there is nothing in this record to support a waiver of that right. We learn from the specifics of *Miranda* that neither the silence of the accused nor the actual giving of a statement is sufficient in this regard and the evidence in this case offers nothing further. But I do not agree, as I read the main opinion to hold, that an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow. *Miranda* states that such a declination followed closely by a statement "could" constitute a waiver. It does not negate other possibilities. Nor would I.

The main opinion also holds that on re-trial all the inculpatory statements of the appellants must be excluded. I am not satisfied that this record requires such a firm direction. The invalid interrogation by state authority does not *necessarily* blanket a federal prosecution with the "fruit of a poisonous tree." Green v. United States, 10 Cir., 386 F.2d 953. I agree, of course, that a written waiver-statement merely reiterating earlier oral statements does not cure a violation of *Miranda* but I do not consider the present record sufficient to dictate the application of that rule. The United States, if it desires to do so, should be given an opportunity to show that the taint of the state in-

terrogation did not project to the federal interrogation and that the latter was within the confines of *Miranda*. There is, in this record, some indication that the statement of Sullins followed quite closely after he signed the form waiver. In all other matters I concur in the opinion.