**Roy Gene BOND, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 9884.**

United States Court of Appeals
Tenth Circuit.

July 15, 1968.

James R. West, Oklahoma City, Okla., for appellant.

Givens L. Adams, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., was with him on the brief), for appellee.

Before WILBUR K. MILLER,* LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

A jury found appellant-defendant guilty of the armed robbery of a post office. He appeals from the sentence imposed.

Defendant argues that inculpatory statements made by him were improperly received in evidence. The setting in which those statements were made must be considered.

At about 3:30 P.M., August 17, 1967, the elderly postmistress at Duke, Oklahoma, was robbed of $29.80 at gunpoint

* Of the District of Columbia Circuit, sitting by designation.

by a long-haired, bearded, young man of beatnik appearance. A description of the robber and his car was broadcast over police radios. About 6:00 P.M. on the same day a Texas highway patrolman saw a car and driver answering the description. A long, high-speed chase, participated in by several Texas officers, resulted in the arrest of the defendant. Immediately thereafter, one of the officers gave orally to the defendant a full warning of his constitutional rights. The officer then asked him about a gun and he said that he had thrown it away during the flight and pursuit.[1] Defendant was then taken to jail at Matador, Texas. The Texas officers learned, apparently through radio communications, that the defendant was wanted in Oklahoma for a state offense and for jail break at Waurika.

A post office inspector, who had been summoned after the robbery, investigated the crime at Duke and, taking the postmistress with him, drove to Matador. He arrived there on the evening of the day of the robbery and saw the defendant in the jail. The inspector orally warned the defendant of his rights, took a personal history, and had no discussion of the Duke robbery.[2] On the next day the inspector filed a complaint with the United States Commissioner at Altus, Oklahoma, charging the defendant with the robbery at Duke.

Defendant waived extradition on the Oklahoma state charges and was taken to the Duncan, Oklahoma, jail. On August 22, he sent word to the inspector that he wished to see him.

The inspector and an F.B.I. agent saw the defendant at Duncan on August 28.[3] The officers informed the defendant of his constitutional rights and submitted a written statement of such rights which was followed by a "WAIVER OF RIGHTS."[4] The defendant read the statement, signed the waiver, and described his robbery of the Duke post office. At the trial the officers testified as to the oral confession.[5]

On September 18, 1967, a federal grand jury indicted the defendant for the post office robbery. On October 11, he was brought before the United States district court under a writ of habeas corpus ad prosequendum for arraignment.

■ Defendant complains of the admission into evidence of the statements made immediately after the arrest and those made at Duncan to the inspector and the F.B.I. agent. He says that these were made before federal arraignment and without advice of counsel and hence, under the principles announced in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, may not be used against him. These cases have no application. The defendant was in the lawful custody of state officers who advised him of his rights to counsel and to remain silent. No collaboration between the state and the federal officers is claimed. A federal complaint was filed promptly

1. The gun was later found and received in evidence at the trial. The postmistress testified that the gun was similar to that used by the robber. The statement of similarity was supported by her evidence that the gun sight was missing on the gun used by the robber and on the gun received in evidence.

2. The uncontradicted testimony of the inspector was: " * * * I took a personal history, simply his name and what have you. I told him that since I knew of his recent jail break, that I assumed that he had no reason to discuss with me what occurred in Duke, and he concurred that he would rather not discuss

it. And we did not discuss it. And I left."

3. For the purpose of this interview the defendant was taken from the jail to a room in the United States Post Office.

4. The waiver is substantially the same as that appearing in Sullins v. United States, 10 Cir., 389 F.2d 985, 987 n. 1.

5. Apparently no written confession was asked or obtained. The defendant did sign an authorization for the return of the proceeds of the robbery which he had in his possession at the time of the arrest.

but the defendant could not be arraigned because he was in state custody. He voluntarily sent for the inspector after his return to Oklahoma. The interrogation was away from the jail. He willingly signed a waiver and promptly confessed the post office robbery. He is in no position to rely on McNabb and Mallory.[6]

In Sullins v. United States, 10 Cir., 389 F.2d 985, we recognized the holding in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, that the government has a "heavy burden" to show a waiver of the constitutional privilege against self-incrimination and the right to counsel and that neither the silence of an accused nor the actual giving of a statement suffices to satisfy a waiver of the constitutional right. We believe that the Texas officers are to be commended. They conducted a dangerous pursuit over the Texas plains and when they accosted the defendant at the point where he was hiding after having driven his car into a ditch, they immediately arrested him and warned him of his rights. They did not question him about the Duke robbery but took him promptly to jail. When the inspector saw the defendant that evening, he did not question the defendant about the robbery. Indeed, the questioning about the robbery did not occur until after the defendant had sent for the inspector and signed the written waiver. The confession followed immediately. We do not read Miranda to hold that "an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow." [7] The circumstances here establish an understanding and voluntary waiver.

During the trial the defendant moved for a hearing outside the presence of the jury to determine the admissibility of certain evidence including his admissions. The motion was denied on the ground that the matters had been covered by an evidentiary hearing held before the trial on a defense motion under Rule 41 (e), F.R.Crim.P., to suppress. The record shows that the court appointed an investigator to aid in the defense, that at the Rule 41(e) hearing the government produced some of the same witnesses as appeared at the trial, that the defense put on no evidence, that after the hearing the court made specific findings of fact, which are sustained by the evidence, and denied the motion, and that no additional grounds were urged at the trial for another hearing on suppression of evidence. In these circumstances the trial judge did not abuse his discretion in denying a second hearing.[8]

Defendant says that without representation by counsel he was subjected to a line-up in violation of his constitutional rights and the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. This point was not raised in the trial court and we notice it only because of our duty under Rule 52, F.R.Crim.P., to consider plain error affecting substantial rights.

The circumstances are these. The postmistress, 68 years of age, was severely upset by the robbery. The inspector suggested it would be good for her to ride to Matador with him. She agreed. At Matador she remained in the car while the inspector went into the jail. Later she left the car and walked around for the exercise. While so engaged, she looked into a lighted room where she saw the inspector talking to a man. She testified that she could just see the top of his head but could not identify the man at that distance. She said that she "presumed" but could not "swear" that the man was the robber.

---

**6.** See Swift v. United States, 10 Cir., 314 F.2d 860, 862; Stille v. United States, 10 Cir., 354 F.2d 233; and Daro v. United States, 10 Cir., 380 F.2d 23, 25.

**7.** See Sullins v. United States, 10 Cir., 389 F.2d 985, 989, opinion of Judge Lewis concurring and dissenting.

**8.** Cf. United States v. Watts, 2 Cir., 319 F.2d 659, 660.

At the time of the robbery the defendant had long blond hair and a black beard and mustache. At the trial his hair was cut and he was clean shaven. The post-mistress identified the defendant as the robber and said that she was sure of her identification because of the man's eyes. The defendant was also identified by a woman who saw him enter the post office and by two filling station attendants in the area who said that he was the driver of the car which was later caught by the Texas officers.

This is not a case like either Wade or Gilbert. There was no line-up or confrontation. The in-trial identification did not rest on anything the witness saw at Matador. The presence of counsel would not have prevented the happen-chance that the witness would look through the window and see the back of a man's head. We find nothing in the occurrence which prejudicially affected any substantial right of the defendant.[9]

The defendant argues that evidence of crimes other than the post office robbery was improperly received. The post master at Albert, Oklahoma, said that the gun identified as used in the robbery was his; that he had last seen it on August 16; and that he had not given the defendant permission to use it. No objection was made to this testimony. The same witness identified a card case which the prosecution offered in evidence. The defense objected on the ground that "it doesn't bear upon the issues of the trial." The court reserved ruling. Later when one of the Texas officers testified that he found the card case in the car which the defendant was driving, the card case was received in evidence without any objection.

A witness named Bradley testified that he owned a 1966, two-door, gun-metal gray, Impala model, Chevrolet bearing license JE–266,[10] and that he had not given permission for the car to be driven to Duke or Matador. The objection was made on the ground that the car was not sufficiently connected with the defendant. The court overruled the objection with permission to renew and it was not renewed. Mrs. Bradley testified that the car was last in her possession on August 13 in Waurika, Oklahoma, and that it then had a television stand in the trunk. Prior to the robbery defendant had traded a television stand for gasoline at a Duke service station. Mrs. Bradley identified the stand so traded as the one which had been in her car. No objection was made to Mrs. Bradley's testimony or to the admission of the stand as an exhibit.

The claim that the noted evidence is improper because it goes to other crimes is raised for the first time on appeal. Failure to make a proper and timely objection to evidence, or to move to strike it after admission, ordinarily is a waiver of the right to object and precludes appellate consideration.[11] An objection on an untenable ground is of no avail to permit appellate challenge on another, but unasserted, ground.[12] The jury was instructed, properly, adequately and without objection, that the defendant could be found guilty only of the crime charged in the indictment. The evidence was material to the issues of the trial,[13] and its admission was not plain error affecting substantial rights so that we need consider it in the absence of a proper trial objection.

Testimony that the F.B.I. was investigating the defendant for other crimes was injected into the trial by defense counsel in cross-examination of an

---

9. Cf. Hanks v. United States, 10 Cir., 388 F.2d 171, 174.

10. This answers the description of the car driven by the defendant at Duke and during the Texas flight.

11. Nutt v. United States, 10 Cir., 335 F.2d 817, 819, cert. denied 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180.

12. See United States v. Indiviglio, 2 Cir., 352 F.2d 276, 279–280, cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663; and 1 Wigmore, Evidence, § 18 at pp. 339–340.

13. Cf. O'Dell v. United States, 10 Cir., 251 F.2d 704, 707.

F.B.I. agent. The ensuing redirect examination did no more than show that the defendant was advised of his constitutional rights. No error occurred.

The claim of misconduct of the prosecutor in connection with the handling of certain Jencks Act statements is so frivolous that it merits no discussion.

Affirmed.