**STATE of Missouri, Respondent,**

v.

**Dennis Paul HUGHES, Appellant.**

No. 55083.

Supreme Court of Missouri, Division No. 1.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Asst. Atty. Gen., Jefferson City, for respondent.

Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for appellant.

WELBORN, Commissioner.

Appeal from life sentence entered upon conviction for murder, first degree, after jury trial.

At around 3:00 P.M., on December 24, 1968, Miss Minnie Putterman was found dead, bound and gagged, lying on the bed, in her third floor apartment at 5536 Pershing Avenue in the City of St. Louis. She had been last seen alive at around 12:00 noon of the same day.

On January 2, 1969, appellant, Dennis Paul Hughes, was arrested at the residence of an aunt in Pine Lawn, Missouri. Hughes was taken to St. Louis Police Headquarters at around 7:00 P.M. on January 2, and made a statement to officers in which he admitted that he had killed Miss Putterman. He was indicted for the crime. Upon his trial, Hughes was shown to have been in St. Louis on December 24, 1968. A partial fingerprint found on a knife discovered at the scene of the crime was identified as having been made by Hughes. Police officers testified to his statement.

On this appeal, appellant challenges the trial court's admission of his statement. He contends that the state failed to show, as a prerequisite for the use of his statement, that he had validly waived his right to counsel before the police interrogation. This point was raised by a pre-trial motion to suppress the statement to the police which was overruled after a hearing. The objection was renewed at the trial and it was again overruled.

On the hearing on his motion, defendant testified that he was 19 years of age and that he had finished the ninth grade of school in St. Louis. He testified that, when he was taken into the interrogation room at police headquarters, one of the officers advised him of his rights, including his right to an attorney. Defendant stated that he said that he wanted an attorney. The request was ignored and questioning began. According to defendant, he denied that he had committed the offense and the four or five officers left the room. Shortly, one officer returned and asked Hughes to tell him what had happened and Hughes said he told him nothing because he had done nothing. With that, according to Hughes, the officer began writing on a yellow pad of paper and wrote for about twenty minutes while Hughes remained silent. The officer then left and after about fifteen minutes the detectives returned and the officer who

had done the writing asked Hughes to tell them what he had told him. Hughes said that all he had said was that he wanted a lawyer, but that the officer then proceeded to read what he said Hughes had told him. Hughes' response to the statement was that he had not done anything.

Detective Herbert Riley of the St. Louis Metropolitan Police Department testified in opposition to defendant's motion. He testified that he interrogated Hughes at headquarters, in the presence of Sergeant Crane, Detective Sergeant O'Connell and Detective Matthews. According to Detective Riley, before the questioning began, he told Hughes that he had a right to remain silent and that anything he said could and would be used against him in a court of law. Hughes responded, "Yes, I understand." Riley further stated: "You have the right to have an attorney, and have him present during the questioning." Riley told him if he could not afford to have an attorney that one would be provided for him before any questioning and Hughes again responded, "I understand." Riley stated that Hughes told the officers of his killing Miss Putterman. The officer made notes of Hughes' statement, but did not otherwise reduce it to writing and submit it to Hughes for signature. Riley did read back his notes to Hughes and Hughes said, "Yes, that's what I said."

The trial court concluded that the statement was voluntary and overruled the motion to suppress.

Three officers who participated in the interrogation testified at the trial to the statement Hughes made. Sergeant Crane and Detective Matthews testified that when Riley advised Hughes of his right to an attorney Hughes replied that he didn't want one; he did not want an attorney. Riley testified that when, after advising Hughes of his rights, he asked, "Do you understand?", Hughes replied affirmatively. When Riley was asked whether Hughes said that he did not want an attorney or did want one, Riley replied: "He never said anything about a lawyer. He did not ask for one."

The question here presented is whether or not the record demonstrates an intelligent and knowledgeable waiver of right to counsel. Appellant contends that the record on waiver of right to counsel is silent, within the meaning of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and State v. McGee, Mo.Sup., 447 S.W.2d 270. Miranda imposes upon the state, in cases involving statements produced by custodial interrogation, a "heavy burden * * * to demonstrate that the defendant knowingly and intelligently waived his * * * right to retained or appointed counsel." 384 U.S. 475, 86 S.Ct. at 1628.

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." 384 U.S. 475, 86 S.Ct. at 1628.

This direction was applied in State v. McGee, supra, with the result that when the record showed only silence on the part of the defendant after warnings had been given, his subsequent statement was inadmissible.

In this case, the defendant was not silent. According to Detective Riley, he acknowledged that he understood so that the situation is not the same as that presented in McGee.

Appellant relies upon Sullins v. United States, (10th Cir.), 389 F.2d 985, as requiring an express declination of consultation with an attorney in order to justify a finding of waiver under the Miranda rules. Two judges in Sullins did so indicate. 389 F.2d 988 [1, 2]. One judge disagreed with the two majority judges insofar as they

held "that an express declination of the right to counsel is an absolute from which, and only from which, a valid waiver can flow. *Miranda* states that such a declination followed closely by a statement 'could' constitute a waiver. It does not negate other possibilities. Nor would I." 389 F.2d 989.

The view of the dissenting judge was apparently adopted by the Tenth Circuit in the subsequent case of Bond v. United States, 397 F.2d 162, cert. den. 393 U.S. 1035, 89 S.Ct. 652, 21 L.Ed.2d 579. In Bond, the court, in a unanimous opinion, quoted approvingly the language above quoted of the dissent in Sullins. See Billings v. People, Colo., 466 P.2d 474, 476; Mingo v. People, Colo., 468 P.2d 849, 852 [8].

In the case of United States v. Montos, (5th Cir.), 421 F.2d 215, 224 [18, 19], [20], cert. den. 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532, the court stated:

" * * * An express statement that the individual does not want a lawyer is not required, however, to show that the individual waived his right to have one present. *See* Bond v. United States, 10 Cir., 1968, 397 F.2d 162, 165. All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. *See* Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

"In this case the record establishes that Montos was adequately advised of his rights and that he voluntarily, knowingly, and intelligently waived them. Stokes read the warnings to Montos and then handed the warning and waiver form to him. After defendant had read the form, Stokes asked if he understood it. Montos replied that he did. Approximately 40 minutes later, after Montos had been questioned briefly, he was taken to the Sectional Center. He there signed the waiver form and asked to call a lawyer. We conclude under all circumstances of the case that the Gov-

ernment met its burden of showing a valid waiver."

■ In this case, the appellant was shown to have had a ninth grade education. That fact would support the conclusion that he had the intellectual capacity to understand the warnings given to him. He acknowledged that he did understand them and proceeded to answer inquiries without objection. The interrogation was not protracted. There is no contention that threats or other forms of coercion were employed. We find that the record in this case adequately demonstrates the appellant's waiver of his right to counsel. United States v. Montos, supra; United States v. Lamia, 2nd Cir., 429 F.2d 373, 377 [6, 7]; United States v. Hayes, 4th Cir., 385 F.2d 375, cert. den. 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106; United States v. Anderson, 2nd Cir., 394 F.2d 743.

Inconsistencies in the testimony of the interrogating officers do not nullify the evidence adduced of adequate warning and the appellant's reaction. The major inconsistency was between the testimony of the appellant that he made no incriminating statement and of the police officers that he did. The trial court obviously resolved this conflict against the defendant. The evidence adduced at the pre-trial hearing was that appellant acknowledged that he understood his rights and thereafter answered questions. Two officers, who were present when Detective Riley advised defendant of his rights, recalled at the trial an express declination by appellant. Without considering those statements, the evidence of waiver was adequate.

■ Appellant's second point on this appeal is that the trial court erred in excluding testimony offered by defendant to impeach Detective Riley. In the cross-examination of Riley, defense counsel asked whether or not, after January 2, 1969, defendant told the witness of his innocence. The state objected, but, before the objection was ruled on, the witness replied negatively and the answer was allowed to stand.

In the defendant's case, he called as a witness, a member of the Public Defender's staff and advised the court that the witness would testify that on January 3, 1969, Riley told him that on January 2, defendant had made certain admissions, but that he was now denying them. The defendant offered this to impeach Riley and the court sustained the objection to the offer of proof on the grounds that the statement would be self-serving.

Regardless of the reason given by the trial court, if his ruling was correct on any basis, it cannot now be relied upon as error. The defendant laid no proper foundation for impeachment of Detective Riley by his prior inconsistent statement. He merely asked the witness whether defendant had protested his innocence subsequent to January 2. The witness was not asked whether he had made the statement to the Public Defender's representative. Impeachment by prior inconsistent statement requires that the witness to be impeached be asked whether he made the statement attributed to him. State v. Clough, 327 Mo. 700, 38 S.W.2d 36, 39 [7]; State v. Mooring, Mo.Sup., 445 S.W.2d 303, 305–306 [3, 4]. There is no error in the trial court's ruling.

■ After the evidence had been closed, the state, out of the presence of the jury, renewed its objection to the reply of Detective Riley to the question about defendant's protesting his innocence after January 2. The court at that time sustained the objection and ordered the negative answer of Riley stricken. As above pointed out, the inquiry made was not adequate to provide a basis for the impeachment testimony subsequently offered. The reply was negative and therefore not helpful to the defendant. No prejudice to the defendant could have resulted from the court's striking the testimony.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.