**Ampara CHAVEZ–RAYA and Gloria Quintanar de Chavez, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 74–1482.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1975.

Decided July 16, 1975.

Michael B. Cohen, Chicago, Ill., for petitioners.

John L. Murphy, Chief, Mary Jo Grotenrath, Atty., Govt. Regulations Section, Crim. Div., U. S. Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for respondent.

Before CLARK, Associate Justice,[*] SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

The issue presented by this case is whether the failure to give *Miranda*[1] warnings to an alien renders his statements inadmissible in deportation proceedings.

The petitioners, Ampara Chavez-Raya and Gloria Quintanar de Chavez, are husband and wife and are natives and citizens of Mexico. According to the petitioners' offer of proof, which was presented at the deportation hearing, the facts surrounding their interrogations are as follows:[2]

On April 25, 1973, investigators from the Immigration and Naturalization Service (INS) came to the hotel where Mr. Chavez was working and had the manager point out Chavez to them. The agents then approached Chavez, identified themselves, and asked Chavez for some identification. When Chavez tendered "a green card," presumably an alien registration card, the agents responded that the card was not Chavez's. They then informed Chavez that he was under arrest. The agents escorted Chavez to their car and Chavez subsequently, under further questioning, made certain admissions.

The agents then drove Chavez to his wife's place of employment where they asked Mrs. Chavez to produce her papers. When Mrs. Chavez indicated that her papers were at home, the agents drove her there and the documents were produced. Both petitioners were then driven to the INS office where they were given *Miranda* warnings and subsequently signed sworn statements.

An order to show cause was subsequently issued against both petitioners. At their joint deportation hearing, the petitioners, who were represented by counsel, refused to testify with respect to the charges of deportability, claiming privilege under the Fifth Amendment. Over petitioners' objections, the immigration judge admitted into evidence the petitioners' sworn signed statements. The Service also presented into evidence Mrs. Chavez's passport.

The immigration judge found that the petitioners were deportable as charged.[3] The Board of Immigration Appeals, upon finding that their deportability was established by clear, convincing and unequivocal evidence, dismissed the petitioners' appeal. The petitioners, pursuant to 8 U.S.C. § 1105a(a), seek review in this court of the final order of deportation. In this appeal the petitioners challenge only the admissibility of the statements and Mrs. Chavez's documents and concede that, if the statements and documents were admissible, the evidence was sufficient to establish deportability.

*Mr. Chavez*

Mr. Chavez contends that his written sworn statement should not have been admitted into evidence at the deportation hearing since he was not given *Miranda* warnings before being questioned at the agents' car.

In those situations in which *Miranda* warnings are required, the warnings must be given when the individual is subjected to a "custodial interrogation." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. The Board of Immigration Appeals did not reach the broad question of whether

---

[*] Associate Justice Tom C. Clark (Retired) of the Supreme Court of the United States is sitting by designation.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Service has not, at any time in the proceedings, disputed this statement of the facts.

3. The immigration judge granted Mrs. Chavez, but not Mr. Chavez, the privilege of voluntary departure.

the *Miranda* rule applies to deportation proceedings since it found that, in any event, Mr. Chavez was not in a "custodial setting" when he was questioned by the agents. We cannot agree with the Board's finding.

 As this court recently noted, "the application of *Miranda* does not turn on such a simple axis as whether or not the suspect is in custody when he is being questioned." *United States v. Oliver*, 505 F.2d 301, 304 (7th Cir. 1974). Rather, the warnings are required if the individual is in custody "or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. A "custodial interrogation," moreover, may occur in places other than a police station. *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

 In the present case, the agents specifically asked at the hotel for Mr. Chavez. The agents allegedly told Chavez that the card which he had tendered to them was not his and that he was under arrest. Chavez was then escorted by the two agents to the agents' car and, at that point, under questioning by the agents, Chavez made the admissions. The agents did not give Chavez *Miranda* warnings prior to this questioning at the car. We conclude that, under these circumstances, Chavez's freedom of movement was significantly restrained during the interrogation at the car and that the petitioner was, therefore, subjected to a "custodial interrogation" without the benefit of *Miranda* warnings.

Moreover, the fact that Chavez was given *Miranda* warnings before he signed the sworn statement is immaterial. The written statement was executed shortly after Chavez had made oral admissions to the same agents without being given the warnings. As the Court noted in *Miranda*, such belated warnings,

from the suspect's point of view, "came at the end of the interrogation process." In this situation, the Court concluded, "an intelligent waiver of constitutional rights cannot be assumed." 384 U.S. at 496, 86 S.Ct. at 1637. See also *Darwin v. Connecticut*, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); *United States ex rel. Williams v. Twomey*, 467 F.2d 1248, 1252 (7th Cir. 1972); *Sullins v. United States*, 389 F.2d 985, 988 (10th Cir. 1968).[4]

We are, thus, squarely faced with the question of whether the failure to give *Miranda* warnings renders an alien's statement inadmissible in a deportation proceeding. It is important to note, however, two matters which are not before us in this appeal. First, we are not here faced with the admissibility in a deportation hearing of a confession which was "coerced" in the sense that it resulted from physical or psychological threats or pressure. See *Bong Youn Choy v. Barber*, 279 F.2d 642 (9th Cir. 1960). Rather Chavez's admissions were "involuntary" only in the sense that he was not informed of his *Miranda* rights. Second, we are not here confronted with the admissibility of an alien's statements in a criminal proceeding arising from the violation of the immigration statutes. See *United States v. Campos-Serrano*, 430 F.2d 173 (7th Cir. 1970), *aff'd on other grounds*, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971). See also *United States v. Dickerson*, 413 F.2d 1111 (7th Cir. 1969).

 Although the consequences of deportation may be severe, *Costello v. Immigration & Naturalization Service*, 376 U.S. 120, 128, 84 S.Ct. 580, 11 L.Ed.2d 559 (1964); *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), deportation proceedings have, nevertheless, been consistently classified as civil rather than criminal.

4. Because of this aspect of *Miranda*, we have attached no significance to the lack of clarity in the record as to just what admissions were made by Mr. Chavez at the time of the automobile interrogation. These were not directly the subject of any testimony at the deportation hearing. In any event, it is not argued by the Government that the sworn statement of Mr. Chavez did other than substantially incorporate his oral statements.

*Woodby v. Immigration & Naturalization Service*, 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952). And while an alien is entitled to due process in the deportation proceedings, *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950); *United States v. Martin*, 467 F.2d 1366 (7th Cir. 1972), such proceedings "are not subject to the constitutional safeguards for criminal prosecutions." *Abel v. United States*, 362 U.S. 217, 237, 80 S.Ct. 683, 696, 4 L.Ed.2d 668 (1960).

Due to its fundamentally civil nature, a deportation hearing differs from a criminal trial in a number of significant respects. There is, for instance, no "presumption of innocence" in the deportation proceeding. Rather, under 8 U.S.C. § 1361, the alien in a deportation hearing has the burden of showing the time, place, and manner of his entry into the United States, and "[i]f such burden of proof is not sustained, such person shall be presumed to be in the United States in violation of law." See *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154, 44 S.Ct. 54, 68 L.Ed. 221 (1923).

The alien can, of course, because of the possibility of criminal prosecution for violation of the immigration laws, decline to testify at the deportation hearing on the basis of the Fifth Amendment. *Valeros v. Immigration & Naturalization Service*, 387 F.2d 921, 922 (7th Cir. 1967). The alien may, however, unlike the criminal defendant,[5] be required to answer nonincriminatory questions about his alien status, *Laqui v. Immigration & Naturalization Service*, 422 F.2d 807, 809 (7th Cir. 1967),[6] and the alien's silence may be used as the basis for drawing certain adverse inferences at least with respect to nonincriminatory matters. As Mr. Justice Brandeis stated in *Bilokumsky, supra:*

> "Silence is often evidence of the most persuasive character. . . . [T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak. . . . A person arrested in the preliminary warrant is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case. There is no provision which forbids drawing an adverse inference from the fact of standing mute." 263 U.S. at 153–54, 44 S.Ct. at 56.

But see *Gastelum-Quinones v. Kennedy*, 374 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013 (1963) (alien's silence is insufficient to provide probative evidence of "meaningful association" with Communist Party).

Furthermore, we note that a number of courts have concluded that an alien's statement, made during a preliminary interrogation, is admissible in a deportation proceeding even though the alien did not have counsel at the preliminary interrogation. See *Lavoie v. Immigration & Naturalization Service*, 418 F.2d 732, 734 (9th Cir. 1969), *cert. denied*, 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1970); *Nason v. Immigration & Naturalization Service*, 370 F.2d 865, 867–68 (2d Cir. 1967); *Ah Chiu Pang v. Immigration & Naturalization Service*, 368 F.2d 637, 639 (3d Cir. 1966), *cert. denied*, 386 U.S. 1037, 87 S.Ct. 1490, 18 L.Ed.2d 601 (1967); *Ben Huie v. Immigration & Naturalization Service*, 349 F.2d 1014 (9th Cir. 1965). The right to appointed,

---

**5.** See *United States v. Oliver, supra* at 304 n. 6.

**6.** "We find nothing unfair or violative of due process about requiring an alien to communicate with immigration officials, concerning nonincriminatory aspects of his immigration status." *Laqui, supra* at 809. However, if the alien asserts his Fifth Amendment privilege in the deportation hearing and is erroneously ordered to testify about matters protected by the Fifth Amendment, this testimony cannot be used as a basis for deportation. *Valeros, supra* at 922.

rather than retained, counsel is particularly dubious where only deportation and not criminal prosecution is involved.[7]

A principal purpose of the *Miranda* warnings is to permit the suspect to make an intelligent decision as to whether to answer the government agent's questions. *Dickerson, supra* at 1114; *Oliver, supra* at 306. In deportation proceedings, however—in light of the alien's burden of proof, the requirement that the alien answer nonincriminating questions, the potential adverse consequences to the alien of remaining silent, and the fact that an alien's statement is admissible in the deportation hearing despite his lack of counsel at the preliminary interrogation—*Miranda* warnings would be not only inappropriate but could also serve to mislead the alien.

We also find guidance for our decision in *United States v. Dickerson, supra*, involving the necessity of *Miranda* warnings prior to interrogation in tax cases. There as here an investigation may be basically civil or it could be or become criminal in nature. The underlying rationale of *Dickerson* appears to be that once the case has been transferred to the Intelligence Division it has sufficient criminal aspects to activate the *Miranda* warning requirement. It is significant to note that the *Dickerson* approach of this circuit has been rejected elsewhere. See *United States v. Dawson*, 486 F.2d 1326, 1329 (5th Cir. 1973), and cases cited therein at n.4. In the present case, there is no indication whatsoever that the investigation had assumed any aspects of criminality; this was merely a routine civil investigation which could lead to deportation of a person who had no right to be in this country.

Given the differences between a deportation hearing and a criminal trial and the fact that *Miranda* warnings "are not mandated by the Constitution itself." *Oliver, supra* at 304, we conclude that, although the lack of *Miranda* warnings would render an alien's statement, made during a custodial interrogation, inadmissible in a criminal prosecution for violation of the immigration laws, *United States v. Campos-Serrano, supra*, the failure to give the *Miranda* warnings does not render the statement inadmissible in deportation proceedings. See *Strantzalis v. Immigration & Naturalization Service*, 465 F.2d 1016, 1018 (3d Cir. 1972); *Jolley v. Immigration & Naturalization Service*, 441 F.2d 1245, 1255 (5th Cir. 1971), *cert. denied*, 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262; *Lavoie, supra; Nason, supra; Ah Chiu Pang, supra*.

### Mrs. Chavez

According to the offer of proof, Gloria Chavez did not make any oral statements to the immigration officers before being given *Miranda* warnings. She did, however, tender her papers to the agents before the warnings were given. In view of our decision that the failure to give *Miranda* warnings does not render evidence inadmissible in deportation proceedings, we need not decide whether Mrs. Chavez was in a "custodial interrogation" at the time she tendered her documents.

The petition for review is denied and the order of deportation is affirmed.

---

7. With regard to an alien's right to appointed counsel at the deportation hearing, 8 U.S.C. § 1252(b)(2) provides: "[T]he alien shall have the privilege of being represented (*at no expense to the Government*) by such counsel . . . as he shall choose." (Emphasis added.) See *Henriques v. Immigration & Naturali-zation Service*, 465 F.2d 119, 121 (2d Cir. 1972), *cert. denied*, 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); *Tupacyupanqui-Marin v. Immigration & Naturalization Service*, 447 F.2d 603, 606 (7th Cir. 1971) (no right to appointed counsel at deportation hearing).