**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE MARIA ZUNIGA DE LA CRUZ,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 21-352

Agency No. A215-674-691

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 16, 2023[*]
Pasadena, California

Filed November 17, 2023

Before: Daniel A. Bress and Salvador Mendoza, Jr., Circuit
Judges, and Joan N. Ericksen, District Judge.[**]

---

[*] We granted the parties' joint motion to submit this case on the briefs
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Joan N. Ericksen, United States District Judge for the
District of Minnesota, sitting by designation.

Opinion by Judge Bress;
Concurrence by Judge Bress;
Concurrence by Judge Mendoza

**SUMMARY**[***]

**Immigration**

Denying Jose Maria Zuniga De La Cruz's petition for review of a decision of the Board of Immigration Appeals, the panel rejected Zuniga's claims that the exclusionary rule of *Miranda v. Arizona*, 384 U.S. 436 (1996), should apply in his removal proceedings, and that he should have received *Miranda* warnings.

The panel observed that this court has long held that the substantial distinctions between a civil deportation proceeding and a criminal trial make *Miranda* warnings inappropriate in the deportation context. Zuniga asked this court to forge an exception, arguing that because he was arrested pursuant to an administrative warrant, his un-*Mirandized* statements should have been excluded. The panel rejected that contention, explaining that Zuniga's focus on the warrant was misplaced because it is the nature of the proceeding (criminal vs. civil), and not the nature of the arrest (warrantless vs. with a warrant) that is relevant.

Concurring, Judge Bress wrote to address Judge Mendoza's concurrence, in which Judge Mendoza suggested

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that this court should consider whether to require aliens to be informed of rights that they do have. Judge Bress wrote that there is no apparent legal basis to order immigration officers to give general, *Miranda*-style prophylactic warnings, or to impose exclusionary rule-type consequences. Judge Bress further observed that *Miranda* is not authority for creating new versions of itself in the immigration context.

Concurring, Judge Mendoza wrote that noncitizens are entitled to due process under the Fifth Amendment, have the right to be represented by counsel at their own expense, cannot be detained solely to verify their immigration status, and have the right to remain silent. Although *Miranda* applies only to criminal proceedings, he saw no reason not to inform noncitizens of their rights, observing that this court in a previous case had affirmed an injunction requiring immigration agents to inform noncitizens of their right to apply for political asylum and their right to counsel.

## COUNSEL

Saman Nasseri, Nasseri Legal, San Diego, California, for Petitioner.

Aric A. Anderson, Trial Attorney; Kohsei Ugumori, Senior Litigation Counsel; United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C.; Brian M. Boynton, Principal Deputy Assistant, California Attorney General; for Respondent.

**OPINION**

BRESS, Circuit Judge:

Our law is clear that the exclusionary rule of *Miranda v. Arizona*, 384 U.S. 436 (1966), does not apply in civil immigration proceedings. The petitioner nonetheless argues that *Miranda* should apply in his removal proceedings, and that he should have received *Miranda* warnings, because he was apprehended by immigration officers pursuant to an administrative warrant. This asserted distinction does not make a difference. We deny the petition for review.

I

The petitioner, Jose Maria Zuniga De La Cruz (Zuniga), is a native and citizen of Mexico. He last entered the United States in November 2004, without being admitted or paroled. In June 2018, an Immigration and Customs Enforcement (ICE) officer conducting a database review determined that Zuniga was likely present in the United States unlawfully. Based on this, the officer secured an administrative arrest warrant. *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

On the morning of June 13, 2018, three ICE officers surveilled Zuniga's residence in Escondido, California. The officers observed a man matching Zuniga's description leave the home and get into a car that was registered under Zuniga's name. Two uniformed ICE officers followed Zuniga and initiated a vehicle stop.

The officers asked Zuniga to identify himself, which he did, presenting a driver's license. When Zuniga asked the

officers why they stopped him, they told him to relax and that they would explain. In response to questioning about his citizenship, Zuniga admitted he was a citizen of Mexico and that he was illegally present in the United States. Zuniga later testified that he felt obligated to answer the officers' questions. The officers did not tell Zuniga he had the right to remain silent, nor did they provide him any other *Miranda* warnings.

Based on Zuniga's admission that he was in the United States illegally, the ICE officers arrested Zuniga and transported him to the San Diego ICE field office for processing. Zuniga was not told that officers had secured an administrative warrant for his arrest. Once at the field office, Zuniga was placed in a holding cell. Zuniga was then personally served with a Notice to Appear (NTA) charging him as removable for being an alien present in the United States without being admitted or paroled.

Later, another ICE officer interviewed Zuniga. At some point during this process, officers asked Zuniga if he needed an attorney. Zuniga was not informed that he could decline to answer questions. Around 5:00 p.m. that same day, Zuniga was released, having spent ten hours in custody. Zuniga later testified that he knew his answers to the officers' questions could affect his immigration status, but that he felt obligated to answer them. Although the officers did not threaten him, Zuniga was nervous during the questioning.

On June 18, 2018, the Department of Homeland Security (DHS) filed the NTA with the immigration court. In a hearing before an Immigration Judge (IJ), Zuniga denied the factual allegations in the NTA and contested removability. DHS then submitted its Record of Deportable/Inadmissible

Alien (Form I-213), in which one of the arresting ICE officers recorded that Zuniga had admitted to being in the United States illegally and to having twice been voluntarily returned to Mexico. Zuniga in turn filed a motion to suppress the Form I-213, arguing that he was coerced into giving the inculpatory statements contained within it.

After hearing testimony from Zuniga, the IJ denied the motion to suppress. The IJ found that ICE officers had not engaged in misconduct and that the Form I-213 neither contained false information nor was obtained through duress. The form was therefore admissible and sufficient to establish Zuniga's unlawful presence in the United States. The IJ further found that Zuniga was not entitled to *Miranda*-type warnings. Because Zuniga did not establish any misconduct by ICE officers, there was no basis to order additional discovery. The IJ thus found Zuniga removable as charged.

The Board of Immigration Appeals (BIA) dismissed Zuniga's appeal. It agreed with the IJ that the arresting ICE officers did not engage in misconduct and that Zuniga had not demonstrated his admissions were coerced. Nor could the Form I-213 be suppressed under *Miranda*. As the BIA explained, "[b]ecause immigration proceedings are civil in nature, questioning for purposes of those proceedings need not be preceded by *Miranda* warnings," whether Zuniga was "arrested with or without an administrative warrant." The Form I-213 thus sufficiently established Zuniga's alienage, and Zuniga had not presented any contrary evidence. The BIA thus agreed that Zuniga was removable.

Zuniga timely petitions for review. We have jurisdiction under 8 U.S.C. § 1252. We review constitutional claims de novo. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1033 (9th

Cir. 2011). And we review the agency's factual determinations for substantial evidence. *Guerra v. Barr*, 974 F.3d 909, 911 (9th Cir. 2020).

## II

Zuniga's petition fails because he seeks to import into the civil immigration context rules that are reserved for criminal cases. Almost forty years ago, the Supreme Court explained that "[c]onsistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). *Lopez-Mendoza* held that based on fundamental differences between immigration proceedings and criminal trials, the Fourth Amendment's exclusionary rule generally does not apply in the former. *Id.* at 1035, 1040–50. We have recognized some very limited exceptions to this rule, *see Sanchez v. Sessions*, 904 F.3d 643, 649 (9th Cir. 2018), but Zuniga does not argue that they apply. The Sixth Amendment's right to counsel is likewise inapplicable in civil immigration proceedings. *E.g.*, *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1987).

Zuniga instead concentrates his argument on the Fifth Amendment, and, more specifically, the "prophylactic rules" of *Miranda*, the violation of which "does not necessarily constitute a violation of the Constitution," but which the Supreme Court has deemed "necessary to protect the Fifth Amendment right against compelled self-incrimination." *Vega v. Tekoh*, 142 S. Ct. 2095, 2106 (2022). Yet here, too, the protections that apply in the civil immigration context do not mimic those afforded to defendants in criminal proceedings. Indeed, we settled the matter nearly fifty years ago.

In *Trias-Hernandez v. INS*, 528 F.2d 366 (9th Cir. 1975), we held that "the substantial distinctions between a deportation proceeding and a criminal trial make *Miranda* warnings inappropriate in the deportation context." *Id.* at 368. We elaborated specifically on why this must be so:

> A principal purpose of the *Miranda* warnings is to permit the suspect to make an intelligent decision as to whether to answer the government agent's questions. In deportation proceedings, however—in light of the alien's burden of proof, the requirement that the alien answer non-incriminating questions, the potential adverse consequences to the alien of remaining silent, and the fact that an alien's statement is admissible in the deportation hearing despite his lack of counsel at the preliminary interrogation—*Miranda* warnings would be not only inappropriate but could also serve to mislead the alien.

*Id.* (quoting *Chavez-Raya v. INS*, 519 F.2d 397, 402 (7th Cir. 1975)) (alterations and citations omitted).

Requiring ICE officers to advise an alien that he has the right to remain silent is incongruous in the civil immigration context, in which "there is no prohibition against drawing an adverse inference when a petitioner invokes his Fifth Amendment right against self-incrimination." *Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011). As Justice Brandeis put it nearly a century back, "there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the

silence of one who is called upon to speak." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154 (1923); *see also, e.g.*, *United States v. Alderete-Deras*, 743 F.2d 645, 647 (9th Cir. 1984). That explains why *Miranda* warnings in this context are not only analytically discrepant but could even create the wrong impression for those who would receive them. *Trias-Hernandez*, 528 F.2d at 368. There is no existing legal basis for transposing into the civil immigration context *Miranda* rules that are designed for criminal defendants (rules the violation of which does not contravene the Fifth Amendment in the first place, *see Tekoh*, 142 S. Ct. at 2108).

Thus, in *Trias-Hernandez*, our foundational precedent, we specifically held that a Form I-213 was not inadmissible in immigration proceedings merely because it contained the petitioner's un-Mirandized statements. 528 F.2d at 368. Our case law is clear: the "[a]dmission of a Form I-213 is fair absent evidence of coercion or that the statements are not those of the petitioner." *Sanchez v. Holder*, 704 F.3d 1107, 1109 (9th Cir. 2012) (per curiam) (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)). There is no such evidence here. Nor does Zuniga argue that ICE violated any of its own regulations.

The law we have just described is settled. In the decades since *Trias-Hernandez*, we have repeatedly recognized and applied its core rule that *Miranda* does not apply in civil immigration proceedings. *See, e.g.*, *Samayoa-Martinez v. Holder*, 558 F.3d 897, 901 n.6 (9th Cir. 2009); *United States v. Salgado*, 292 F.3d 1169, 1173 (9th Cir. 2002); *United States v. Solano-Godines*, 120 F.3d 957, 960–61 (9th Cir. 1997) ("*Miranda* warnings are not required before questioning in the context of a civil deportation hearing . . . . This is because deportation proceedings are not criminal

prosecutions, but are civil in nature."); *Villegas-Valenzuela v. INS*, 103 F.3d 805, 813 (9th Cir. 1996); *Alderete-Deras*, 743 F.2d at 648; *Tejeda-Mata v. INS*, 626 F.2d 721, 724 n.3 (9th Cir. 1980); *Cordon De Ruano v. INS*, 554 F.2d 944, 946 (9th Cir. 1977) (explaining that *Trias-Hernandez* "completely foreclosed" the argument that evidence was inadmissible in a deportation hearing due to the lack of *Miranda* warnings).

As far as we are aware, every circuit to have addressed the issue agrees. *See, e.g.*, *Navia-Duran v. INS*, 568 F.2d 803, 808 (1st Cir. 1977); *Avila-Gallegos v. INS*, 525 F.2d 666, 667 (2d Cir. 1975); *Bustos-Torres v. INS*, 898 F.2d 1053, 1056 (5th Cir. 1990); *Chavez-Raya v. INS*, 519 F.2d 397, 402 (7th Cir. 1975); *Puc-Ruiz v. Holder*, 629 F.3d 771, 779 (8th Cir. 2010); *United States v. Valdez*, 917 F.2d 466, 469 (10th Cir. 1990); *see also Lopez-Mendoza*, 468 U.S. at 1039 (noting that "[t]he Court of Appeals have held . . . that the absence of *Miranda* warnings does not render an otherwise voluntary statement by the [alien] inadmissible in a deportation case").

Against this tower of precedent, Zuniga asks us to forge an exception. He claims that because he was arrested pursuant to an administrative warrant, *see* 8 U.S.C. § 1226(a), his un-Mirandized statements in the Form I-213 should have been excluded in his removal proceedings. In Zuniga's view, "an arrest pursuant to an administrative immigration warrant is closer to a criminal arrest which require *Miranda* warnings be given."

Zuniga's focus on the use of the administrative warrant is misplaced. In determining whether *Miranda*'s exclusionary rule applies, it is the nature of the proceeding in which the inculpatory statements are to be used (criminal

vs. civil immigration), and not the nature of the arrest (warrantless vs. with a warrant) that is relevant. As we have explained, "[a]lthough a lack of *Miranda* warnings might render [an alien's] statements inadmissible in a criminal prosecution for violation of the immigration laws, the failure to give *Miranda* warnings d[oes] not render them inadmissible in deportation proceedings." *Alderete-Deras*, 743 F.2d at 648. Zuniga's effort to obscure the fundamental distinction between criminal cases and civil immigration proceedings—and the varying rights that attach in each—must be rejected. *See United States v. Nicholas-Armenta*, 763 F.2d 1089, 1090 (9th Cir. 1985) ("Criminal convictions are the result of a proceeding with all the constitutional safeguards. Respondents in a civil deportation hearing, however, are not entitled to the same constitutional rights afforded a criminal defendant."). We have never suggested that the use of an administrative warrant transforms a civil immigration proceeding into a criminal trial subject to *Miranda*'s prophylactic rules. Nor would such a rule be consistent with established law.

For these reasons, the IJ and BIA did not err in rejecting Zuniga's motion to suppress. Nor was any further discovery necessary.

**PETITION DENIED.**

BRESS, Circuit Judge, concurring:

Judge Mendoza's separate concurrence agrees that under our precedents, Mr. Zuniga was not entitled to *Miranda* warnings or the benefits of *Miranda*'s exclusionary rule. But Judge Mendoza suggests we should consider whether to require aliens to be informed of rights that they do have. Setting aside that this issue is not presented in this case, it is not clear what basis we would have to impose such general disclosure obligations.

The lone authority Judge Mendoza's concurrence cites, *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990), affirmed a district court injunction requiring immigration officials to inform Salvadorians of their right to apply for asylum and to be represented by counsel at no cost to the government. *Id.* at 551, 567–68. But that injunction was based on an "overwhelming" factual record of government "coercion and interference," coupled with "a strong likelihood of future violations." *Id.* at 557, 559, 564; *see also Valencia v. Mukasey*, 548 F.3d 1261, 1263 (9th Cir. 2008) (distinguishing *Orantes-Hernandez* because it involved "a demonstrated pattern and practice of abuses by the INS against members of the class").

*Orantes-Hernandez*, a remedial decision based on extreme facts, provides no support for any broader, court-created duties to inform aliens of their rights. There is no apparent legal basis for courts to order immigration officers to give general, *Miranda*-style prophylactic warnings of the kind Judge Mendoza's concurrence appears to endorse. Nor is there any apparent legal basis to impose exclusionary rule-type consequences for immigration officers' failure to comply with these general court-made disclosure rules.

*Miranda*, which does not apply here, is not authority for creating new versions of itself in the immigration context.

---

MENDOZA, Circuit Judge, concurring:

In the summer of 2018, several law enforcement officers began investigating Petitioner Jose Maria Zuniga De La Cruz. They obtained a warrant for his arrest and tracked him down in the early hours of June 13. Two officers stopped him as he was driving, detained him, and peppered him with questions about his immigration status. Mr. Zuniga was understandably rattled and confused. He wanted the officers to explain the gravity of the situation; the potential consequences of his actions; and what rights he had, if any at all. He now asks us to find that "his right to counsel and to remain silent attached at the moment of his arrest," and that ICE was required to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

Our precedent compels us to deny his request. *Miranda*'s well-known prophylactic advisements only apply in criminal proceedings. *See Trias-Hernandez v. INS*, 528 F.2d 366 (9th Cir. 1975). Mr. Zuniga was investigated by a civil ICE officer; arrested pursuant to a civil administrative warrant; placed in civil removal proceedings; and subjected to the civil penalty of removal from the country. From Mr. Zuniga's perspective, these are distinctions without a difference: nothing appears to distinguish legal proceedings initiated by ICE from those initiated by the police, other than federal officials sticking a "civil" label on one and a "criminal" label on the other. Nonetheless, Mr. Zuniga was not entitled to a *Miranda* warning, nor the full set of rights

afforded to criminal defendants.  *See Trias-Hernandez*, 528 F.2d at 368.

But Mr. Zuniga, like all noncitizens, has constitutional rights.  "[A]liens facing deportation from this country are entitled to due process rights under the Fifth Amendment." *Walters v. Reno*, 145 F.3d 1032, 1037 (9th Cir. 1998).  They have the right to be represented by counsel at their own expense.  *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990).  They cannot be detained solely for the purpose of verifying their immigration status.  *See Arizona v. United States*, 567 U.S. 387, 413 (2012).  And they have the right to remain silent, although this silence can be used against them in civil proceedings.  *See United States v. Alderete-Deras*, 743 F.2d 645, 647 (9th Cir. 1984).

In keeping with our constitutional principles, I see no reason not to *inform* noncitizens of their rights.  In *Orantes-Hernandez*, we did just that—affirming an injunction requiring immigration agents to inform noncitizens of their right to apply for political asylum and their Fifth Amendment right to be represented by counsel.  919 F.2d at 554.  And though Mr. Zuniga's *Miranda* argument fails, it raises important questions: when should immigration officers advise noncitizens of their rights, and what exactly should this prophylactic warning look like?  We have not had the opportunity to fully address these questions; but to ensure that noncitizens know their rights when they matter most, perhaps it is time we did.