Gerard Joseph **LAVOIE**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 23182.

United States Court of Appeals Ninth Circuit.

Nov. 21, 1969.

Rehearing Denied Jan. 9, 1970.

---

Norman Leonard (argued), of Gladstein, Andersen, Leonard & Sibbett, San Francisco, Cal., for appellant.

David R. Urdan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., Stephen M. Suffin, Atty., I & NS, San Francisco, Cal., John N. Mitchell, Atty. Gen. of the U. S. A., Washington D. C., for appellee.

Before MADDEN,* Judge of the United States Court of Claims; MERRILL and CARTER, Circuit Judges.

## J. WARREN MADDEN, Judge:

The petitioner, pursuant to Section 106 of the Immigration and Nationality Act, 8 United States Code Section 1105a, seeks review by this court of an order of the Immigration and Naturalization Service, directing petitioner's deportation to Canada. The petitioner is a citizen of Canada who entered the United States for permanent residence on January 26, 1960. On June 2, 1961, he was arrested by a San Francisco policeman and charged with a violation of Section 215 of the San Francisco Municipal Police Code, by being a party to a lewd, obscene and indecent act. He pleaded guilty and was sentenced for the violation.

The San Francisco incident came to the attention of the United States Immigration and Naturalization Service, hereinafter called the Service. On August 30, 1961, the petitioner made a sworn statement before an investigator employed by the Service, from which statement it appeared that he had engaged in numerous homosexual acts during the years 1945 to 1961.

In January, 1962, the Service issued to the petitioner an Order to Show Cause why he should not be deported. The order alleged that he was a sexual deviate at the time of his entry into the United States, and was subject to deportation under Section 241(a) (1) of the Immigration and Nationality Act, [8 U.S.C. Section 1251(a) (1)] in that "at the time of entry you were within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens afflicted with psychopathic personality under Section 212 (a) (4) of the Act." [8 U.S.C. Section 1182(a) (4)]

A hearing was held before a "special inquiry officer" of the Service. That officer, in a written decision, held that a person who had engaged in numerous homosexual acts over a period of at least eleven years, as the petitioner had done, is a sexual deviate and is included within the class which Congress intended to cover by the words "psychopathic personality" in Section 212(a) (4) of the Act. The petitioner appealed from the decision of the special inquiry officer to the Board of Immigration Appeals. The Board ordered the case remanded to the special inquiry officer for purposes not relevant to the instant proceeding. On the remand, the special inquiry officer, after a hearing, in effect made the same decision which he had made before. The petitioner again appealed to the Board. On May 28, 1965, the Board ordered that the appeal be dismissed.

On July 7, 1965, the petitioner filed in this court a petition for review of the deportation order. This court, in Lavoie v. United States Immigration and Naturalization Service, 360 F.2d 27, on

---

* Senior Judge, The United States Court of Claims, sitting by designation.

April 8, 1966, set aside the deportation order on the ground that the statute on which the order was based was void for vagueness. The Service petitioned the Supreme Court of the United States for a writ of certiorari. The petition was granted on June 5, 1967, 387 U.S. 572, 87 S.Ct. 2069, 18 L.Ed.2d 965, the Court citing Boutilier v. Immigration and Naturalization Service, 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661, May 22, 1967, in which the Court had held that the statute here in question was not void for vagueness, and remanding the case to this court in order that it "may pass upon the issues in this case not covered by its prior opinion". That action of the Supreme Court disposed of the "void for vagueness problem." But this court in its decision cited above, had expressly found it unnecessary, in view of its decision that the pertinent statute was void for vagueness, to pass upon other issues presented by the petitioner. An additional issue had been raised in the meantime, by the decision of the Supreme Court in the case of Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362, December 12, 1966. The Court said, in Woodby, that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true", 385 U.S. 285–286, 87 S.Ct. 488.

Pursuant to the remand to this court from the Supreme Court, this court remanded the case to the Service for reconsideration, in the light of the intervening decision in Woodby, supra, and without limitation upon the authority of the service to consider other issues. The case being again before the Service, the petitioner presented two issues: (1) the claim that a statement obtained by the Service from the petitioner at a time when he was not represented by counsel nor advised of his right to be so represented was not, over timely objections, admissible against him, and (2) the claim that the Service's evidence did not come up to the Woodby standard.

As to the admissibility of the petitioner's statement to the Service's investigator, this court's decision in Ben Huie v. Immigration and Naturalization Service, 349 F.2d 1014 (1965) is controlling. See also MacLeod v. Immigration and Naturalization Service, 327 F.2d 453, (CA 9, 1964); Nason v. Immigration and Naturalization Service, 370 F.2d 865, (CA 2, 1967); and Pang v. Immigration and Naturalization Service, 368 F.2d 637, (CA 3, 1966). The decisions cited above are to the effect that deportation proceedings are civil and not criminal, in nature, and that the rules laid down in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) requiring the presence of counsel during interrogation, and other Sixth Amendment safeguards, are not applicable to such proceedings. Furthermore, the petitioner's statement to the investigating officer was made when he was not in custody and was not induced by coercion, duress or other improper action of any agent of the Government. Our conclusion is that the petitioner's statement was admissible in evidence at the deportation hearing.

The statement above adverted to was that the petitioner, during a period of some eleven years before and up to the time of his entry into the United States frequently and regularly engaged in homosexual acts. As we have recited above, the special inquiry officer, based upon the petitioner's statement described above, and after hearing the conflicting testimony of two psychiatrists, made findings that the petitioner was, at the time of his entry into the United States, a homosexual and as such was a sexual deviate deportable as a member of the class of aliens afflicted with a psychopathic personality, within the meaning of the deportation statute. The special inquiry officer ordered the petitioner's deportation. The petitioner appealed to the Board of Immigration Appeals, which dismissed his appeal. He again

sought review by this court, of the deportation order.

■ We now consider the petitioner's contention that the evidence upon which the Service based its deportation order did not come up to the standard set by the Supreme Court in Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 285–286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966), supra, in which the court said "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true."

Since our remand to the Service called for reconsideration in the light of *Woodby* there can be no question that the Service, on remand, had the proper standard in mind. That standard, applicable to the Service, does not apply to this court on our review of the Service's order. On review, our standard, fixed by 8 U.S.C. Section 1105a(a) (4), is that the agency determination must be supported by reasonable, substantial and probative evidence on the record considered as a whole.

The Service based its deportation order upon the fact that the petitioner, at the time of entry, was a "homosexual". If the issue of fact in the case were whether, by scientific psychological standards, the petitioner was properly classified as a "homosexual," it would be difficult to say that the evidence met the statutory standard applicable to our review. The petitioner's psychiatrist, Dr. Diamond, having made an extensive examination of the petitioner, testified "I do not even regard him as a homosexual in any sense of the word," and gave his reasons for his conclusion. The Service's psychiatrist, Dr. Beittel, in his written report, to the Service, had expressed doubt as to whether the petitioner was a homosexual and, in his oral testimony, he said he would not positively state that the petitioner was a homosexual.

The case of Boutilier v. Immigration and Naturalization Service, supra, 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967), went to the Supreme Court from the United States Court of Appeals for the Second Circuit. The court, in Boutilier v. I. N. S., 363 F.2d 488 (2 Cir. 1966) had reviewed and affirmed the Service's order that Boutilier be deported. In that case the special inquiry office ordered deportation, finding that Boutilier had been a homosexual at the time of entry. He said that the phrase "psychopathic personality" as used in Section 212(a) (4) of the Immigration and Nationality Act [1] is not a "medical formulation" but is a legal term of art evincing a Congressional purpose to exclude from this country any alien who is shown to be a homosexual. The Court of Appeals in Boutilier, supra, at pages 492–493, said:

> [W]e believe the term "psychopathic personality", as employed in section 212(a) (4) reflects a Congressional purpose to prevent alien homosexuals from obtaining admission into this country. It was employed as a term of art to be interpreted by what Congress intended as a guide, and not to be left to the vagaries and honest but conflicting theories of psychiatry for determination. The legislative history * * * leaves no room for doubt that Congress intended to exclude homosexuals and would have expressly so provided if the Public Health Service had not advised that the term "psychopathic personality" alone was sufficient to accomplish this result.

On page 494, the Court said:

> Thus, on the basis of this brief survey of the legislative history of section 212(a) (4) it seems fairly clear that Congress utilized the phrase "psychopathic personality" not as a medical or psychiatric formulation but as a legal term of art designed to pre-

---

1.  8 United States Code Section 1182(a) (4).

clude the admission of homosexual aliens into the United States.

We do not repeat, in this opinion, the legislative history which the Court of Appeals relied upon in Boutilier. That history was recounted in the Boutilier case in the Supreme Court of the United States, supra, 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661. The Court there said:

> The legislative history of the Act indicates beyond a shadow of a doubt that the Congress intended the phrase "psychopathic personality" to include homosexuals such as petitioner.

and at page 122, 87 S.Ct. at page 1566 the Court said:

> We, therefore, conclude that the Congress used the phrase "psychopathic personality" not in the clinical sense, but to effectuate its purpose to exclude from entry all homosexuals and other sex perverts.

The Boutilier case is controlling in the case before us. In both, the person ordered to be deported had frequently, over a period of years before entry engaged in homosexual acts. Each was a person who, in common opinion, would be regarded as a homosexual. The fact that one or more psychiatrists might regard such a person as having "character disorder, psychopathic or otherwise" as the petitioner's psychiatrist testified, or that another psychiatrist might regard such a person as not necessarily a homosexual, but as a sexual deviate, as the Service's psychiatrist testified, are both irrelevant, in view of the meaning which the Supreme Court in Boutilier gave to the pertinent statute.

Applying the proper standard to the evidence which was relevant, under the Boutilier interpretation of the statute, the evidence in support of the order was reasonable, substantial and probative. It was, and is, uncontradicted.

The petition for review of the Service's order of deportation is denied, and the order is affirmed.