NAI CHENG CHEN
and
Yuan Jung Chen, Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 76-1065.

United States Court of Appeals,
First Circuit.

Argued May 6, 1976.

Decided July 13, 1976.

Stanley R. Lapon, Cambridge, Mass., with whom Altman & Lapon, Cambridge, Mass., was on brief, for petitioners.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D. C., with whom Philip Wilens, Acting Chief, Government Regulations and Labor Section, Crim. Div., and James P. Morris, Atty., Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Petitioners, husband and wife, are natives and citizens of China. Mr. Chen was admitted to the United States as a nonimmigrant visitor in September, 1970; he later changed his status to that of a nonimmigrant student. His wife entered the United States as a nonimmigrant spouse in December, 1971. Both husband and wife received several extensions in the time of their stay, the last of which expired on June 30, 1973. The couple stayed beyond that date, but then requested and were granted the privilege of departing voluntarily on or before June 10, 1974. When they failed to depart by that date, the Immigration and Naturalization Service (INS) instituted deportation proceedings. At the deportation hearing petitioners objected to the admission of certain evidence, specifically their passports and I-94 forms,[1] on the ground that these items had been obtained as a result of an unconstitutional custodial interrogation of Mrs. Chen. The immigration judge admitted the items, found both petitioners to be deportable,[2] and granted them voluntary departure. Petitioners thereupon took their case to the Board of Immigration Appeals.[3] The Board rejected their claims and the instant petition for review followed.

Petitioners' complaints concerning the admissibility of documents derive from a single event, viz. a visit to their home in Hyannis, Massachusetts by an immigration inspector on August 19, 1974. On that occasion the inspector identified himself to Mrs. Chen who was at home with her three children, and inquired as to her identity. He asked her the whereabouts of her husband and was told that he was at work. The inspector also inquired whether a particular attorney (whom he named) represented the couple in immigration matters

1. The parties are in dispute as to whether Mrs. Chen's Form I-94 was included with the passports which she turned over to the immigration inspector on August 19, 1974. *See* discussion *infra.* We need not resolve this factual question, however, in light of our ultimate disposition.

2. The judge found that as to Mr. Chen there was clear, unequivocal and convincing evidence of his deportability irrespective of the challenged documents.

3. Although their cases are conjoined on appeal petitioners are essentially contesting only the deportability of Mrs. Chen.

and Mrs. Chen responded affirmatively. He then requested and was given the passports of Mrs. Chen and her husband. She asked when their passports would be returned and was told that this would occur at an immigration hearing of which they would be notified by mail.

Petitioners first contend that since the INS already possessed information indicating the couple might be deportable and had focussed an investigation on them, it was required to give Mrs. Chen the warnings enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) prior to questioning her and that in the absence of such warnings the documentary evidence obtained by the INS officer should have been excluded at the deportation hearing. However, this claim cannot prevail. *Miranda* involved a criminal prosecution, whereas deportation proceedings are presently viewed as civil in nature. *See Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586 (1952). *But cf. Abel v. United States,* 362 U.S. 217, 237, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). "[T]he rules laid down in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) requiring the presence of counsel during interrogation, . . . are not applicable to such proceedings." *Lavoie v. INS,* 418 F.2d 732, 734 (9th Cir. 1969), *cert. denied,* 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1970). And the full panoply of other procedural and substantive safeguards which are provided in a criminal proceeding are not required at a deportation hearing. *See Chavez-Raya v. INS,* 519 F.2d 397 (7th Cir. 1975); *Ah Chiu Pang v. INS,* 368 F.2d 637, 639 (3d Cir. 1966), *cert. denied,* 386 U.S. 1037, 87 S.Ct. 1490, 18 L.Ed.2d 601 (1967). Hence, even if Mrs. Chen were assumed to have been in custody at the time she was questioned,[4] her statements as well as the documents she turned over were admissible at the deportation hearing despite the absence of *Miranda* warnings. *Chavez-Raya v. INS, supra* at 402; *see also Strantzalis v. INS,* 465 F.2d 1016 (3d Cir. 1972); *Lavoie v. INS, supra; Nason v. INS,* 370 F.2d 865 (2d Cir. 1967).

Petitioners also contend that it was a denial of due process and equal protection for the INS officer not to have given Mrs. Chen *Miranda* warnings since aliens interviewed at Immigration Service offices are routinely given such warnings. However, this claim is without merit. The INS provides *Miranda* warnings when questioning aliens in custody at its offices in order to maintain the option of bringing a criminal prosecution. In the present case, as noted above, the proceedings are essentially civil and the interview with Mrs. Chen was not custodial in nature, *see* n. 4 *supra.*

Petitioners also urge that the failure of the INS to notify their counsel of record of the intended questioning of Mrs. Chen was a violation of both 5 U.S.C. § 500(f) and the American Bar Association's Code of Professional Responsibility. We are unpersuaded by either claim. Their reliance on § 500(f)[5] is inapposite. In the instant case the interview occurred during a preliminary

---

**4.** Petitioners claim that the questioning of Mrs. Chen, conducted outside her home, constituted custodial interrogation because the "aura of governmental authority which surrounds the immigration officer, backed up by the lurking sanction of deportation, necessarily imparts to the alien a desire not to offend the interrogator." We do not agree with this claim. Mrs. Chen was not taken into custody or otherwise deprived of her freedom of action in any significant way. *See Beckwith v. United States,* — U.S. ——, 96 S.Ct. 1612, 48 L.Ed.2d 1, 44 U.S. L.W. 4499 (1976). "An interview with government agents in a situation such as the one shown by this record simply does not present the elements which the *Miranda* Court found so inherently coercive . . . ." *Id.* —— U.S. at ——, 96 S.Ct. at 1616, 44 U.S.L.W. at 4501.

**5.** Title 5, U.S.C. § 500 provides in pertinent part:

"(f) When a participant in a matter before an agency is represented by an individual qualified under subsection (b) or (c) of this section, a notice or other written communication required or permitted to be given the participant in the matter shall be given to the representative in addition to any other service specifically required by statute. When a participant is represented by more than one such qualified representative, service on any one of the representatives is sufficient."

stage, before the INS had instituted formal deportation proceedings against petitioners.[6] While § 500(f) requires that when a participant in a matter before an agency is represented by counsel any notice or other written communication directed to the participant shall be given to counsel, the statute would not appear to bar an agency from conducting preliminary investigations of possible violations of the laws it is charged with enforcing.

■ Petitioners also point to a portion of the ABA's Code of Professional Responsibility which restricts an attorney's communications "with a party he knows to be represented by a lawyer."[7] They claim that the immigration officer violated this rule by failing to inform their counsel in advance of the investigative interview, and that consequently all information elicited, including the documents, should be suppressed. We need not decide, however, whether a violation of the Code would require such suppression, since we find none. The Code's prohibition on an attorney's communicating with a represented party is relaxed if the attorney "had the prior consent of the lawyer representing such other party *or is authorized by law to do so.*" (Emphasis supplied.) Immigration Service investigators are authorized by law "to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States." 8 U.S.C. § 1357(a)(1) (1970). While we consider it better practice for the INS to provide an alien's counsel of record with notice of impending contacts and in-

vestigations which may involve crucial aspects of an alien's case,[8] cf. *United States v. Crook,* 502 F.2d 1378, 1380 (3d Cir. 1974), cert. denied, 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975); *United States v. Four Star,* 428 F.2d 1406, 1407 (9th Cir.), cert. denied, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970); *Wilson v. United States,* 398 F.2d 331, 333 (5th Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712 (1969); *Coughlan v. United States,* 391 F.2d 371, 372 (9th Cir.), cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968), nevertheless we do not think that in the present state of the law the failure to provide notice to counsel of an investigative interview requires the exclusion of evidence obtained from this contact at the deportation hearing. The preliminary interview which occurred here, *see* n. 6 *supra,* is not analogous to interrogating or obtaining a statement from a criminal defendant after a formal complaint has been filed. *See United States v. Thomas,* 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). Accordingly, under the circumstances of the present case it was not improper for the immigration judge to consider the documentary evidence obtained from Mrs. Chen. *See United States v. Springer,* 460 F.2d 1344, 1354 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972).

Petitioners also appeal the Board's denial of a motion to remand and reopen their deportation proceeding.[9] In their motion

---

**6.** The interview in question occurred on August 19, 1974. The INS did not issue an order to show cause (instigating the deportation proceedings against petitioners) until September 23 of that year.

**7.** Disciplinary Rule 7–104(A)(1) of the ABA Code of Professional Responsibility (successor to Canon 9 of the ABA Canons of Ethics) provides:

"*Communicating With One of Adverse Interest.* (A) During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless has the prior

consent of the lawyer representing such other party or is authorized by law to do so." *See United States v. Masullo,* 489 F.2d 217, 223 n. 3 (2d Cir. 1973).

**8.** In this regard we note that in the instant case Member Appleman of the Board of Immigration Appeals expressed the view (in a concurring opinion) that the Service ought not to engage in the "general practice of interviewing aliens, without advising known counsel of record. . . ." We tend to think this view has considerable merit.

**9.** Petitioners filed with the Board on May 27, 1975, a motion to remand their deportation proceeding to the immigration judge so that he

both husband and wife sought adjustment of status as nonpreference immigrants (8 U.S.C. § 1153(a)(8)), and Mrs. Chen claimed that she satisfied the labor certification requirements of 8 U.S.C. § 1182(a)(14) as an "investor" within the contemplation of 8 C.F.R. § 212.8(b)(4). This regulation defines the basic requirements of "investor" status as an investment of at least $10,000 in an enterprise and at least one year's "experience or training qualifying the alien to engage in the enterprise."[10] The Board denied the motion to remand on the ground that Mrs. Chen had failed to present a prima facie case of eligibility for investor status under the regulation.

▪ While we have authority to consider the denial by the Board of a motion to reopen a deportation proceeding, see *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964); *Chul Hi Kim v. INS,* 357 F.2d 904, 907 (7th Cir. 1966), our review is limited to determining whether the Board abused its discretion in denying the motion. *Velasquez Espinosa v. INS,* 404 F.2d 544, 546 (9th Cir. 1968); *cf. Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir. 1971). The record in the present case discloses that petitioners invested $10,000 or more in the Ming's Garden Chinese Restaurant, Inc. in Manomet, Massachusetts, and the Board concedes that "Mrs. Chen invested the necessary amount of capital in the enterprise." It maintains, however, that she did not satisfy the requirement of one year training or experience which would qualify her to engage in such an enterprise.

In its opinion the Board held that Mrs. Chen (who had stated on her application that she served as manager of the restaurant in question) did not have experience "related to the management" of a Chinese restaurant. The record shows that she completed a three-month course in Chinese cooking in Taiwan and a one-month course in bartending. In addition, she cited six months' experience as an employee of a Chinese restaurant in Hyannis where she provided assistance to cooks and served as a waitress. The Board contends that the management of a restaurant involves "more . . . than cooking and serving drinks" and that Mrs. Chen's previous positions do not qualify her for such tasks as bookkeeping and the supervision of employees.

While Mrs. Chen's prior training and positions are certainly not unrelated to the task of running a restaurant, we do not substitute our assessment of these facts for that of the Board. We note, however, that in May, 1975 when she filed with the Board (as part of the motion for a remand) the appropriate form requesting designation as an investor, Mrs. Chen accompanied the request with supportive documents, see 8 C.F.R. § 212.8(b)(4), indicating that the Chinese restaurant of which she was serving as manager had been acquired by petitioners in early November 1974.[11] This information, available in the record, indicates that Mrs. Chen potentially had the benefit of more than six months on-the-job practical experience as manager.[12] While we are

---

might consider their motion to reopen and for reconsideration. See 8 U.S.C. § 1255(a) (1970).

10. Regulation 8 C.F.R. § 212.8 provides in pertinent part:

"(b) *Aliens not required to obtain labor certifications.* The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require a labor certification: . . . (4) an alien who establishes . . . that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or

training qualifying him to engage in such enterprise. . . ."

11. We also note that in Item 8 of the form for requesting investor status (where the alien is asked to specify "the number of hours per week" to be devoted to the enterprise), Mrs. Chen stated that her position as manager would involve working "52 hours a week."

12. Inasmuch as 8 C.F.R. § 212.8(b)(4) permits the INS to consider requests for designation as an investor from immigrants who are only "in the process of making [an] investment," as well as from those such as Mrs. Chen who have already made one, it might be appropriate, where petitioners acquired the restaurant more than six months before the date of their motion

uncertain as to how much weight may be accorded experience accrued during the course of an alien's appeal of deportation, we note that Mrs. Chen's training, taken in combination with her prior experience, might be viewed as providing a considerable range of familiarity with most of the important tasks likely to be necessary to operate a restaurant successfully, and possibly might bring her within the terms of 8 C.F.R. § 212.8(b)(4). *See Talanoa v. INS,* 427 F.2d 1143 (9th Cir. 1970).

We refer this matter to the Board for further clarification of the relevance of the training involved in this case. Accordingly, the portion of the Board's decision denying petitioners' motion to remand and reopen is vacated, and the case is remanded to the Board for proceedings in light of this opinion.

*So ordered.*

to the Board for a remand, for Mrs. Chen's experience during that interval to be considered in a determination of her investor status.