Felipe CABRAL–AVILA et al.,
Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 77–1626.

United States Court of Appeals,
Ninth Circuit.

May 30, 1968.

Rehearing Denied Aug. 31, 1978.

Certiorari Denied Feb. 21, 1979.
See 99 S.Ct. 1245.

Charles N. Bendes, of San Francisco Neighborhood Legal Ass't Foundation, San Francisco, Cal., for petitioners.

Lawrence W. Chamblee, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before HUFSTEDLER, SNEED, and KENNEDY, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Petitioners appeal from an order of the Board of Immigration Appeals, affirming the immigration judge's findings of deportability. Jurisdiction is founded on Section 106 of the Immigration and Nationality Act (8 U.S.C. § 1105a (1970)).

On May 20, 1976, Immigration and Naturalization Service investigators, Marquis and Reed, went to 2615 Lombard Street, San Jose, California, to check out information that they had received from two informants that illegal aliens resided at the address. The informants said that Felipe Cabral, Marylou Cabral, and Carlos Cabral lived at the address. In addition to those names, the informants supplied the investigators with the Social Security number of one of the subjects.

The officers knocked at the door, but were kept waiting for some time. Sylvia Cabral, a daughter of Felipe and Lucrecia Cabral, answered the door. She denied that anyone else was in the house, but officers had earlier observed that two individuals were hiding beneath the house. Petitioners were placed under arrest and statements were made to the officers which were recorded on I–213 forms (Record of Deportable Alien), after the two had been coaxed from beneath the house.

At their deportation hearing, the Cabrals, on advice of counsel, refused to testify concerning their deportability, invoking the Fifth Amendment. Officer Marquis was questioned concerning the circumstances of the arrest and search in an attempt by petitioners' counsel to show that illegal procedures had been utilized. The Immigration judge concluded that the I–213 forms dated August 2, 1971, relating to the petitioners, which had been executed in connection with a prior entry and which had been in possession of the Service at the time of their last arrest, revealed that Felipe had entered the United States in June, 1968, by paying $200.00 to a smuggler. Felipe had admitted alienage and deportability. The same I–213 statement indicated that Lucrecia and Maria had previously entered the United States on July 26, 1973, at which time they also admitted alienage and deportability.

The immigration judge concluded that the statutory presumption of illegally being in the country arose pursuant to 8 U.S.C. § 1361, and that the burden of going forward was therefore shifted to the petitioners to prove that they were legally in the

United States. Because the petitioners did not offer evidence tending to prove their legal presence in the United States, the immigration judge found them deportable, and the Board of Immigration Appeals affirmed.

■ Information received from the informants coupled with the conduct observed at the residence, including the observation of the petitioners, created founded suspicion to detain these persons for interrogation under Section 1357(a). (*Au Yi Lau v. I&NS,* 144 U.S.App.D.C. 147, 445 F.2d 217 (1971); *Yam Sang Kwai v. I&NS,* 133 U.S.App.D.C. 369, 411 F.2d 683 (1969).)

Assuming, without deciding, that probable cause was necessary to justify the arrest of Felipe and Maria Cabral, founded suspicion that these persons were illegal aliens ripened into probable cause, not only in respect of Felipe and Maria, but also with respect to the other petitioners. Accordingly, we have no occasion on this record to reach the question whether the use of I–213 forms could be considered tainted, if their discovery was connected with an illegal arrest.

■ The immigration judge correctly decided that the petitioners were required to rebut the finding of deportability due to the admission of the I–213 forms. Once the forms have been properly admitted, the Service's *prima facie* case of deportability is made. (8 U.S.C. § 1361.) The burden of going forward to produce evidence of nondeportability then shifts to the petitioners. No abridgement of the petitioners' Fifth Amendment rights are involved in requiring them to go forward with the production of evidence. The deportation proceeding, despite the severe consequences, has consistently been classified as a civil, rather than a criminal matter. (*Woodby v. I&NS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); *Lavoie v. I&NS,* 418 F.2d 732 (9th Cir. 1969).)

■ Petitioners' decision to remain mute during the deportability phase of the hearing was an appropriate exercise of their Fifth Amendment privilege, but by doing so they do not shield themselves from the drawing of adverse inferences that they are not legally in this country and their silence cannot be relied upon to carry forward their duty to rebut the Government's *prima facie* case.

AFFIRMED.

KENNEDY, Circuit Judge, concurring:

I concur. This opinion does not hold, directly or by implication, that the exclusionary rule for illegally-seized evidence applies in a deportation proceeding. That question is not presented here.