**UNITED STATES of America, Plaintiff,**

**v.**

**Jose MONTOYA–ROBLES, Defendant.**

**No. 96–CR–0064–S.**

United States District Court,
D. Utah,
Central Division.

Aug. 7, 1996.

---

Elizabethanne Stevens, Asst. U.S. Atty., Salt Lake City, Utah, for Plaintiff.

Mary C. Corporon, Salt Lake City, Utah, for Defendant.

## ORDER

SAM, District Judge.

Before the court is an "Appeal From and Objection to Report and Recommendation" filed by defendant Jose Montoya–Robles. By this document, defendant objects to a Report and Recommendation signed by the magistrate judge on June 28, 1996.

The court has considered the matter *de novo* and concludes that the Report and Recommendation is correct in every material respect and adopts it as the court's own opinion. Accordingly, defendant's motion to suppress is hereby DENIED.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

The defendant, Jose Montoya–Robles, has been indicted on one count of reentry of a deported alien subsequent to a conviction for an aggravated felony (8 U.S.C. § 1326) (File Entry # 9). The defendant has made a motion to suppress "statements of the defendant under 18 U.S.C. § 3501(a) and based on alleged violation of the Constitution of the United States" (File Entry # 16). The defendant also seeks suppression of the "fruits" of the statements. The defendant contends a statement was taken from him in violation of

**1198**

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant contends that prior to his deportation from the United States through the port of El Paso, Texas, on various instances, defendant was interviewed by Immigration and Naturalization Service (INS) officers relative to his citizenship and status and no *Miranda* warnings were given to the defendant (Defendant's memorandum, File Entry # 17). Defendant contends that on May 1, 1994 when he was again found in the United States in Texas he was again questioned by INS agents without *Miranda* warnings. Defendant contends there may also have been other such questioning by INS agents. The defendant also contends that all records of defendant's prior deportations must be suppressed (Id.).

The United States filed a response to the motion (File Entry # 23). It states that no evidence of any statements defendant made to any INS agent will be offered at trial, except for a statement made by defendant to INS Special agent Creighton West on March 26, 1996. That statement was preceded by a *Miranda* warning and a waiver of rights was made by defendant.

The United States indicated it would offer into evidence orders to show cause, warrants of deportation, immigration judge orders, and advice of felony which relate to each of five deportations the United States contends apply to the defendant. An audio tape or transcript of defendant's deportation hearing of September 18, 1995 will be offered in evidence. The United States also contends no *Miranda* warning was required to be given by INS agents interviewing the defendant for deportation (File Entry # 23).

Hearing on the motion to suppress was held on May 20, 1996. On May 30, 1996 the defendant submitted a supplemental memorandum (File Entry # 26) in which defendant contends the *Miranda* warning given to defendant by Agent West was defective because there was no specific statement that counsel would be appointed for the defendant "free of charge" if he could not afford counsel (Id.). The United States submitted a supplemental response asserting the *Miranda*

warning that was given to the defendant was adequate (File Entry # 29).

The case has been referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted pursuant to the reference on the defendant's motion to suppress.

*Evidence and Hearing*

At hearing, counsel for the defendant Montoya–Robles indicated that some of the evidence relative to Montoya–Robles status, entry into, and deportation from the United States on more than one occasion is from Immigration and Naturalization Service (INS) records. (Tr. pp. 3–4). The defendant contends the information in the records was obtained by questioning the defendant, without benefit of a *Miranda* warning.[1] The INS created a record entitled "record of deportable alien" during an administrative interview with the defendant (Tr. p. 4). Defendant contended potentially incriminating statements as to family history and nationality were obtained (Tr. pp. 4–5). Also, during such an interview, the legality of the defendant's entry was asked about. Eventually this inquiry gave rise to deportation proceedings before an immigration judge. At that point the defendant was afforded an opportunity to obtain an attorney (Tr. p. 5). If a waiver of rights was obtained the defendant was deported (Tr. p. 6). Defendant contends the original administrative interviews required a *Miranda* warning. Defendant contends the orders and information acquired in the deportation proceedings are the fruit of prior illegal interrogation.

The United States represented that the first record of defendant's deportation is May 27, 1993 under the name of Fausto Velasquez–Rojas (Tr. p. 16). The United States indicated it intended to introduce into evidence records from the deportation proceedings. The United States intends to offer the orders to show cause, the orders of the immigration judges, 1–294 forms which advise the alien of the potential penalties on reentry, and the warrants of deportation (Tr. p. 16). A tape of the last deportation proceeding or

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.  1602, 16 L.Ed.2d 694 (1966).

a transcript will be introduced (Id.). No statement of the defendant will be offered except the interview on March 26, 1996, following defendant's last arrest. The statement was given to Special Agent Creighton West of the INS, after preinterrogation warnings (Tr. p. 17). Statements made during prior deportations will not be introduced. Consequently, no consideration as to *Miranda* need be given, as to those matters, except as to whether the records of the INS, including the deportation proceedings, are "tainted" by the circumstances defendant says occurred.

The United States will also seek to introduce a memorandum conviction of defendant under 8 U.S.C. § 1325 which occurred May 4, 1994 and his deportation on August 3, 1994, under the name of Miguel Zamora–Garcia (Tr. p. 18). Records of five deportations will be offered. The records to be introduced are Exhibits 2–20.

Defendant did not testify or provide any affidavits as to the absence of *Miranda* warnings in conjunction with any prior deportation action. His position is based only on argument.

Defendant also challenges the admissibility of the statement given to Agent Creighton West. Agent West testified at the suppression hearing.

Agent West testified that he is a Special Agent with the INS and investigates criminal and administrative violations of the Immigration and Nationality Act and related laws (Tr. p. 21). West speaks Spanish (Tr. p. 22).

The agent interviewed defendant on March 26, 1996 after defendant's release to the INS following his release from the Salt Lake County Jail. The interview was at the INS office in Murray, Utah. The interview was in Spanish (Tr. pp. 22–23). The defendant was advised of his rights from FD Form–395, the Spanish version (Pl.Exh. I; Tr. pp. 23–24). Agent West read the form to defendant and asked him if he understood his rights (Tr. p. 23). When the agent was satisfied defendant understood and said so, the waiver portion of the form was read to him. Defendant was asked if he were willing to answer questions and he agreed. Defendant signed

his name and Agent West also signed the form (Pl.Exh. 1 pp. 23–24). The interrogation was on March 26, 1996 staring at 1:30 p.m. (Tr. p. 24). The warning given was:

A. Before you are asked any questions, you should understand what your rights are.

Q. The next Line?

A. You have the right to remain silent.

Q. And the next line?

A. Anything that you say may be used against you in a court.

Q. And the next line?

A. You have the right to consult with a lawyer so that he may counsel you before we ask you the questions, and also you have the right to the presence of an attorney during the questioning.

Q. And what does the next line say?

A. If you cannot pay the expenses of a lawyer, one will be assigned to you before the beginning of the questioning if that is your desire.

Q. And the next line?

A. If you decide to answer questions now without an attorney being present, you will still have the right to refuse to answer at anytime. If you also—you also have the right to interrupt your answers at anytime until you have consulted with an attorney.

(Tr. pp. 24–25).

The waiver of rights advice read to the defendant was:

A. Waiver of Rights. I have read this statement of my rights and I understand what they are. I am willing to make a statement and answer questions. I do not desire the presence of an attorney at this time. I realize what I am doing. No promises or threats have been made to me and no pressure has been exerted against me.

(Tr. p. 26).

Defendant signed the form at 1:34 p.m. The interview was in Spanish and defendant responded in Spanish. Defendant admitted the elements of the present offense and his prior deportation (Tr. pp. 26–27). The agent did

not make any threats or promises and used no force (Tr. p. 28). The defendant may have been in handcuffs. The defendant responded without hesitation.

The agent did not tell defendant he was investigating a potential criminal prosecution (Tr. p. 29). The agent agreed the warning did not expressly say if defendant wanted an attorney that one would be provided "free of charge" (Tr. p. 30). The warning did say "if you cannot pay the expenses of an attorney, one will be assigned to you or provided to you before the beginning of questioning" (Tr. p. 30). Nothing in the advice is said about it being free of charge (Id).

Following the hearing, defendant submitted a supplemental memorandum on May 30, 1996 and the United States submitted such a memorandum on June 4, 1996 (File Entries 26–29).

Based on the evidence the court enters the following findings of fact:

1. Defendant has been taken into custody on five occasions, using various names, and has been administratively deported from the United States as an illegal alien.

2. During the deportation process the defendant would probably have been interviewed by an INS agent and information on his status and background obtained. There is no evidence as to whether defendant was given *Miranda* warnings during such interviews. Defendant has offered no factual evidence that such warnings were not given nor has the United States stated that a warning was given. The United States does not intend to introduce any statement made by defendant to any INS official related to his prior deportations. The United States does intend to offer or introduce a statement defendant gave to INS Special Agent Creighton West at an interview on March 26, 1996.

3. As a result of prior deportation processes and proceedings records were generated. Exhibits 2–22. The records are about defendant and his deportations. Various names were used by defendant in his prior deportation circumstances. The records are of immigration proceedings against defendant and do not contain any statements of the defendant given to an INS officer other than procedural acknowledgment. They are orders to show cause, notice of hearing, the decision of an immigration judge, information to the alien on removal, in Spanish, and warrants of deportation and allied documents which are independent of defendant's statements (Exhibits 2–22). The United States also intends to introduce a tape or transcript of deportation proceedings before an Immigration and Naturalization Service Administrative Law Judge.

4. The records of deportation and deportation proceedings are attenuated from any statement made by defendant to an INS officer prior to deportation. The records are independently generated quasi judicial documents associated with the deportation process.

5. On March 26, 1996 INS Special Agent Creighton West interviewed the defendant. Defendant was advised of his preinterrogation rights. The preinterrogation rights were read to the defendant in Spanish by Agent West. Defendant was advised of his right to remain silent, that anything defendant said may be used in evidence in a court, that defendant had the right to the presence of an attorney during questioning and that if defendant could not pay the expenses of a lawyer one would be assigned to him before beginning questioning. The defendant acknowledged he understood those rights. Defendant did not ask for a lawyer, he was not told of the potential for a criminal charge or that an attorney would be provided "free of charge." Defendant was thereafter advised as to the waiver of those rights and he acknowledged a willingness to make a statement without an attorney, that he realized what he was doing and no threats or pressure had been exerted against him. The defendant then signed the written waiver of rights form. No threats, promises, force, coercion or duress of any kind was used against defendant. Defendant thereafter made an incriminating statement. The statement was of defendant's own free will.

6. Defendant previously pled guilty to a misdemeanor charge under 8 U.S.C. § 1325. There is no showing of any facts to establish that the plea entered, in that case, was involuntary.

*Discussion*

*Miranda Warnings Before Deportation*

■ The defendant, in his motion to suppress has asserted that during prior administrative deportation interviews he was not given a *Miranda* warning before he made statements. However, there is no factual evidence to show that is what occurred. No affidavit or other evidence has been presented to support that contention. However, the United States will not offer any statements the defendant may have made on the prior occasions when he was interviewed for deportation. Therefore, there is no issue on that matter in regard to any statement defendant may have made.

■ The United States contends that no *Miranda* warning was required to be given during defendant's various deportation interviews. The prosecution contends such interviews are not for criminal purposes but that the inquiry is administrative and preliminary to deportation and that *Miranda* has no application. There is no question that *Miranda* was directed toward police interrogation in a custodial setting. *Miranda v. Arizona,* 384 U.S. at 445–458, 86 S.Ct. at 1612–1619; *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) (interrogation by feigning inmate in jail setting does not require *Miranda* warning). The administrative interview of an alien to verify background and historical information before deportation cannot be assumed to be the functional equivalent of a police dominated atmosphere involving interrogation as to criminal conduct absent specific evidence of such circumstances. The deportation inquiry is not to ferret out criminal violations. Most courts have concluded that deportation interviews are part of the civil process of deportation and *Miranda* is not applicable.

■ The Supreme Court has not directly addressed the matter but in *Immigration & Naturalization Service v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778

(1984) the Supreme Court addressed the exclusionary rule in INS deportation cases. Although the case involved a Fourth Amendment violation [2] the court refused to apply an exclusionary rule. The court said the purpose of deportation was not to punish but to end violations of the immigration laws. The court said consistent with the *civil* nature of the proceedings various protections that apply in the context of a criminal case do not apply. *Id.* pp. 1038–39, 104 S.Ct. at 3483. The court observed:

The Court of Appeals have held, for example that the absence of Miranda warnings does not render an otherwise voluntary statement by the respondent inadmissible in a deportation case. *Navia–Duran v. INS,* 568 F.2d 803, 808 (CA1 1977); *Avila–Gallegos v. INS,* 525 F.2d 666, 667 (CA2 1975) *Chavez–Raya v. INS,* 519 F.2d 397, 399–401 (CA7 1975).

The court also said the body of the defendant is never suppressible as a fruit of illegal action. *Id.* p. 1039, 104 S.Ct. at 3483.

The court said that defendant Sandoval–Sanchez, had objected to evidence offered at the deportation proceeding. The court referred to *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) wherein the exclusionary rule was not applied to a civil tax proceeding as to evidence illegally seized that was turned over to the Internal Revenue Service for the civil tax proceedings. The court found the application of the exclusionary rule to involve a high social cost if applied in deportation proceedings. Relying on *Janis* the court rejected the application of the exclusionary rule to deportation proceedings. *Id.* p. 1050, 104 S.Ct. at p. 3489. "There comes a point at which courts, consistent with their duty to administer law, cannot continue to create barriers to law enforcement in the pursuit of a supervisory rule that is properly the duty of the Executive and Legislative Branches," quoting from *United States v. Janis,* 428

---

**2.** *Miranda* is not a decision founded on the Constitution. It is a prophylactic to protect a person's privilege against self-incrimination. *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974); *New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626,

2630–31, 81 L.Ed.2d 550 (1984); *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); see Joseph D. Grano, *Miranda's Constitutional Difficulties: A Reply to Professor Schulhofer,* 55 U.Chi.L.Rev. 174 (1988).

U.S. at 459, 96 S.Ct. at 3034. The theme of *Lopez–Mendoza,* would lead to the rejection of the defendant's argument.

In *Lavoie v. Immigration and Naturalization Service,* 418 F.2d 732 (9th Cir.1969) the court held an alien's statement given when he was not represented by counsel or advised of his rights was admissible. The proceedings were said to be civil. *Id.* p. 734. In *Jolley v. Immigration and Naturalization Service,* 441 F.2d 1245 (5th Cir.1971) the court said deportation proceedings are civil rather than criminal:

> It has been uniformly held that deportation proceedings are civil rather than criminal; thus, the warnings required by Miranda are not automatically applicable. See *Lavoie v. Immigration & Naturalization Serv.,* 9 Cir.1969, 418 F.2d 732, cert. denied, 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92; *Nason v. Immigration & Naturalization Serv.,* 2 Cir.1967, 370 F.2d 865; *Pang v. Immigration & Naturalization Serv.,* 3 Cir.1966, 368 F.2d 637, cert. denied, 386 U.S. 1037, 87 S.Ct. 1490, 18 L.Ed.2d 601.

In *Chavez–Raya v. Immigration and Naturalization Service,* 519 F.2d 397 (7th Cir. 1975) the court concluded that a custodial interrogation that did not involve a *Miranda* warning did not preclude admission of the alien's statement in a deportation proceeding. *Id.* p. 402, citing *Jolley,* supra, and *Strantzalis v. Immigration and Naturalization Service,* 465 F.2d 1016, 1018 (3rd Cir.1972). Accord: *Avila–Gallegos v. Immigration and Naturalization Service,* 525 F.2d 666 (2d Cir. 1975) ("Since deportation proceedings are not criminal in nature . . . there was no necessity for *Miranda* warnings."); *Nai Cheng Chen v. I.N.S.,* 537 F.2d 566 (1st Cir.1976) (". . . even if Mrs. Chen were assumed to have been in custody at the time she was questioned, her statement, as well as the documents she turned over, were admissible at the deportation hearing despite the absence of *Miranda* warnings."); *Cordon De Ruano v. Immigration and Naturalization Service,* 554 F.2d 944 (9th Cir.1977) (failure to give *Miranda* warnings before questioning did not prevent admissibility of alien's passport).

In *Trias–Hernandez v. I.N.S.,* 528 F.2d 366 (9th Cir.1975) the court said that because of the civil nature of deportation proceedings *Miranda* warnings were inappropriate. The court referred to *Chavez–Raya,* supra. In *Navia–Duran v. I.N.S.,* 568 F.2d 803 (1st Cir.1977) referring to its prior decision in *Nai Cheng Chen,* supra, the court said "*Miranda* warnings are not applicable in a deportation setting." Id. p. 808. Most recently, in *Bustos–Torres v. I.N.S.,* 898 F.2d 1053 (5th Cir.1990) the court said "*Miranda* warnings are not required in the deportation context, for deportation proceedings are civil, not criminal in nature, and the Sixth Amendment safeguards are not applicable." The court referred to *Trias–Hernandez,* supra; *Chavez–Raya,* supra; and *United States v. Alderete–Deras,* 743 F.2d 645, 648 (9th Cir. 1984).

From these cases it is apparent that any failure to give defendant a *Miranda* warning in connection with defendant's prior civil deportations would not offend *Miranda* and any evidence generated by the process would not be the fruit of any illegality. There is no effort to introduce, in this case, any prior statement of defendant in the deportation proceedings and the records created in the administrative deportation proceedings are not tainted by the failure to have provided a *Miranda* warning.

■ The exclusionary rule requires exclusion of evidence obtained from the violation of Constitutional rights and the fruits derived from such a violation. As to the fruits of any alleged illegal conduct, the proper inquiry is whether evidence has been obtained by exploitation of the prior illegality. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) ("fruit of the poisoned tree."). *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). However, the Supreme Court has limited the exclusion of evidence by the "attenuation" doctrine. In *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) the Supreme Court upheld the admission of a wit-

ness's testimony whose identity was discovered during an illegal search. In *Michigan v. Tucker*, supra, the Supreme Court refused to exclude derivative evidence obtained without compliance with *Miranda* where there was no violation of constitutional rights. In *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) the court held an illegal arrest did not bar a witness's in court identification.[3] Therefore, if the generalization of the INS administrative proceedings record and documents are attenuated from any *Miranda* violation, the evidence would be admissible even if there was a prior illegality.

■ Attenuation must be determined from the totality of the circumstances. *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir.1996). In *United States v. Cusumano*, 67 F.3d 1497 (10th Cir.1995), in a concurring opinion, the attenuation doctrine was stated:

Attenuation, while not specifically connected to the Fourth Amendment, is a related exclusionary principle involving sanctions for violations of constitutional protections. The doctrine concerns direct or derivative evidence obtained from an earlier constitutional violation. This secondary evidence is often referred to as the "fruit of the poisonous tree." Thus, where police illegally conduct a search without a warrant, the evidence obtained is tainted. The tainted evidence may provide probable cause warranting a second search, but any evidence found from the second search is excludable because it is considered the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). Again, the Court quickly developed exceptions to the compass of exclusion under the "poisonous tree" doctrine so as to remove the original taint and thus make the consequent evidence admissible at trial. "A court may admit evidence that would not have been discovered but for official misconduct if the causal connection between the illegal conduct and the acquisition of the evidence is so attenuated that the evidence is 'purge[d of] the primary taint.' "

In *United States v. Mendoza–Salgado*, 964 F.2d 993 (10th Cir.1992) the court said where there was a primary taint from an unlawful entry, the subsequent consent to search given by defendant's wife after the atmosphere had quieted and advice of rights was provided, was attenuated from the prior illegality. Also, in *United States v. Boone*, 62 F.3d 323 (10th Cir.1995) the court held a prior illegal restraint of defendant and her companion was attenuated by their subsequent flight and throwing drug evidence from the vehicle. The court stressed the intervening circumstances, p. 326.[4] This should be contrasted with the application of the exclusionary rule to evidence of other crimes obtained during prior illegal arrests. *United States v. Hill*, 60 F.3d 672 (10th Cir.1995). The court in *Hill* discussed the matter from a deterrence of a police standpoint. The court did not refer to *United States v. Janis*, supra, which is the more applicable case to facts of the instant situation and which should be applied to the subsequent Immigration court generated records.

In *United States v. Alderete–Deras*, supra, the court held that records of deportation were admissible in a criminal case despite the claim of the taking of illegal statements from the defendant:

Because the government sought only to prove the fact of Alderete's deportation, and not to use the statements themselves as evidence in the criminal trial, the district court erred in granting Alderete's motion to suppress.

In *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1047 (9th Cir.1990) the court considered the admission of a deportation record as the fruit of the prior illegal interrogation. The court noted the Supreme Court had left open the question of whether a *Miranda* violation would warrant exclusion of physical evidence, citing *New York v.*

---

3. *Crews*, supra, may not be an attenuation case but one of a distinct piece of evidence independently admissible. *United States v. Slater*, 692 F.2d 107, 108 (10th Cir.1982). This is also the case with the records in this matter.

4. The court applied the factors for attenuation of confessions identified in *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). See 62 F.2d at 325–26.

*Quarles,* supra; *Michigan v. Tucker* and *United States v. Scalf,* 708 F.2d 1540, 1545 (10th Cir.1983) (issue not considered *Id.* p. 1546). The court said:

> We find that the reasoning of Elstad and Tucker applies as well to nontestimonial physical evidence obtained as a result of a Miranda violation. Cf. *Patterson,* 812 F.2d at 1193 (citing Elstad and Tucker, the court held that pre-Miranda statements could be used in affidavit for search warrant to establish probable cause). The critical inquiry is whether the unwarned statements preceding a subsequent, warned confession or discovery of derivative evidence are made voluntarily. Where there is no evidence of coercion or a denial of due process in elicitation of the statements, the object of the fifth amendment exclusionary rule—assuring trustworthiness of evidence introduced at trial—is not served by barring admission of the derivatively obtained evidence or statements. See *U.S. v. Sangineto–Miranda,* 859 F.2d [1501] at 1518 [ (6th Cir.1988) ] citing *United States v. Washington,* 431 U.S. 181, 187–88, 97 S.Ct. 1814, 1818–19, 52 L.Ed.2d 238 (1977).

894 F.2d at 1048.

For these reasons the attenuation doctrine would apply to this case in any event and the deportation records should not be excluded.

▮ Defendant asserts that a *Miranda* warning should have been given at the deportation hearings. However, generally *Miranda* has no application to judicial or quasi judicial proceedings. *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (no *Miranda* warnings need be given to a grand jury witness); *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977) (no warning before grand jury); *United States v. Wong,* 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977) (false statement not subject to suppression because of failure to give

warning before grand jury); *United States v. Kordel,* 397 U.S. 1, 10–12, 90 S.Ct. 763, 768–70, 25 L.Ed.2d 1 (1970). See also *United States v. Anderson,* 481 F.2d 685, 696 (4th Cir.1973) aff'd 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974). A *Miranda* warning is inconsistent with the status of a putative deportee, *Trias–Hernandez v. I.N.S.,* supra, or a witness in a judicial proceeding. *United States v. Mandujano,* supra, 425 U.S. at 580–582, 96 S.Ct. at 1778–79. A deportation proceeding does not entitle a subject to counsel or the trappings of a criminal prosecution. *Michelson v. I.N.S.,* 897 F.2d 465 (10th Cir. 1990); *Burquez v. I.N.S.,* 513 F.2d 751, 755 (10th Cir.1975). The substantive content of *Miranda* is not applicable. In *United States v. Valdez,* 917 F.2d 466 (10th Cir.1990) the court held an alien had no right to a *Miranda* type warning in a deportation proceeding. I.N.S. regulations and procedures provide adequate protection for a deportee. *Id.* p. 468–69.

It must be concluded that defendant had no right to a *Miranda* warning before or during his deportation proceedings. Therefore, no exclusion of evidence is required.

Based on the analysis of defendant's contentions it must be concluded he has no basis to suppress the I.N.S. deportation records or transcripts of proceedings.[5]

### Defendant's Statement To Agent West

▮ Special Agent Creighton West interviewed the defendant while he was in custody on March 26, 1996. The questioning was proceeded by a preinterrogation warning in Spanish. The defendant has not testified to any lack of understanding of the advice. The advice given defendant was that he had a right to silence, if he did say anything it may be used against him in court. The agent also read the warning which advised the defendant that he had the right to the presence of an attorney during questioning and that "if defendant could not pay the expenses of a

---

**5.** The United States also will offer the defendant's misdemeanor conviction under 8 U.S.C. § 1325. No showing of any *Miranda* problem has been made as to that item of evidence, however, defendant's plea of guilty would act to waive any *Miranda* objection. *McMann v. Rich-*

*ardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *United States v. Dahlman,* 13 F.3d 1391, 1394 (10th Cir.1993).

lawyer one would be assigned to him before beginning questioning, if that is your desire." Defendant said he understood and signed a written waiver.

Defendant now contends the warning was deficient because he was not told the attorney would be provided free of charge. The warning advised the defendant that the attorney would be assigned "if you cannot pay the expenses of a lawyer." The warning advised that defendant could still have a lawyer even though defendant could not pay for one. That is all *Miranda v. Arizona,* supra, requires. *Id.* 384 U.S. at p. 444, 86 S.Ct. at p. 1612 (". . . that he has a right to the presence of any attorney, either retained or appointed"), p. 478–79, 86 S.Ct. at p. 1630 (". . . that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."). See also p. 473, 86 S.Ct. at p. 1627 (". . . if he is indigent a lawyer will be appointed to represent him."). Nowhere in *Miranda* is there any requirement that a suspect be advised, in addition, that the lawyer is free of charge. Defendant has not provided the court with any authority that has imposed such a requirement.

In this case, there was no failure to comply with the required *Miranda* advice.[6] In *California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981) the court said it "has never indicated the 'rigidity' of *Miranda* extends to 'a precise formulation . . . nothing suggests any desirable rigidity in the *form* of the required warnings. Quite to the contrary, *Miranda* itself indicated that no talismanic incantation was required to satisfy its structures.' The court upheld the admissibility of a questioning sequence where the suspect was told of the right to 'talk to a lawyer before' he was questioned and have him present during questioning' then intervening advice was given and then advice that that defendant had a right to appointed counsel at no cost. The defendant had argued there was a separation between the right to counsel at questioning and the right to counsel if he couldn't afford it at the time of appointment. The court

found the advice adequate and the disjointed sequence did not require suppression.

In *Duckworth v. Eagan,* 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) the court held advice to a suspect that an attorney would be appointed "if and when he went to court." The defendant had been told he had a right to an attorney "during questioning" but was told the officers had no way of giving the suspect a lawyer. *Id.* p. 198, 109 S.Ct. at p. 2877–78. The court said:

> We have never insisted that *Miranda* warnings be given in the exact form described in that decision. In *Miranda* itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." 384 U.S., at 476 [86 S.Ct. at 1629] (emphasis added). See also *Rhode Island v. Innis,* 446 U.S. 291, 297, 100 S.Ct. 1682, 1687, 64 L.Ed.2d 297 (1980) (referring to "the now familiar *Miranda* warnings ... or their equivalent"). In *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), we stated that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." *Id.,* at 359, 101 S.Ct., at 2809.

Miranda has not been limited to station house questioning, see *Rhode Island v. Innis,* supra (police car), and the officer in the field may not always have access to printed *Miranda* warnings, or he may inadvertently depart from routine practice, particularly if a suspect requests an elaboration of the warnings. The prophylactic *Miranda* warnings are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defin-

---

6. Contrast *United States v. DiGiacomo,* 579 F.2d 1211 (10th Cir.1978) (failure to advise suspect of his right to appointed counsel requires suppression).

ing the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by *Miranda.*" *Prysock,* supra, 453 U.S., at 361, 101 S.Ct., at 2810.

In *United States v. Hernandez,* 913 F.2d 1506 (10th Cir.1990) defendant challenged the preinterrogation warning given to him in Spanish. The court upheld the advice even though there was some ambiguity in the warning. The court said the translation need not be perfect. In *United States v. Soria–Garcia,* 947 F.2d 900 (10th Cir.1991) a customs officer gave a warning, in Spanish, to a suspect. The warning was read to him in Spanish and it was in essentially the same form as in this case. *Id.* p. 901. Defendant contended the warning was inadequate because he was not told he had a right to a lawyer at "no cost." The trial judge suppressed the statement, but the Court of Appeals vacated the suppression. The Court of Appeals relied on *Duckworth* and *Prysock* and said:

> The warning given Soria clearly indicates that if Soria had no money to hire an attorney one would be either "appointed" or "obtained" before any questioning. The "at no cost" language might be desirable, but, under the circumstances, such is not necessary in order that there be a full advisement of Soria's rights. In support of the foregoing, see *Chambers v. Lockhart,* 872 F.2d 274 (8th Cir.1989), cert. denied, 493 U.S. 938, 110 S.Ct. 335, 107 L.Ed.2d 324 (1989).[FN2]

---

FN2. State courts which have addressed this issue likewise have found warnings adequate despite the lack of "no cost" language. See *Smith v. State,* 292 Ark. 162, 729 S.W.2d 5 (1987); *Commonwealth v. Marsh,* 440 Pa. 590, 271 A.2d 481 (1970); *State v. Hutton,* 57 Wash. App. 537, 789 P.2d 778 (1990). But see *Perez v. People,* 176 Colo. 505, 491 P.2d 969 (1971).

*Soria-Garcia,* governs this case. There was no violation of *Miranda.* Defendant waived his rights and gave a voluntary statement. There has been no violation of 18 U.S.C. § 3501 or *Miranda.*

#### Conclusion

Defendant's motion to suppress should be denied.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

**DATED** this 28th day of June, 1996.

### *CERTIFICATE OF MAILING*

I hereby certify that I have mailed a copy of the foregoing Report and Recommendation to the following persons on the 28th day of June, 1996.